EDWARD SERRANO *v.* NANCY E. SERRANO
(13685)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued October 4—decision released November 21, 1989

1

*Shirley Pripstein,* for the appellant (defendant).

*Theodore Poulos,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is whether the 1984 amendments to § 152 (e) of the Internal Revenue Code, 26 U.S.C. § 152 (e),[1] divested state courts of the authority to designate which party in actions for dissolution of marriage may claim the dependent child exemption for federal income tax purposes. After finding that the marriage between the plaintiff husband and the defendant wife had irretrievably broken down, the trial court rendered judgment dissolving the marriage and establishing the custodial and

---

[1] Title 26 of the United States Code, § 152 (e), as amended by Pub. L. No. 98-369, § 423 (a), 98 Stat. 494, 799–800, 848 (1984), provides in pertinent part: "(e) SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ETC.

(1) Custodial parent gets exemption

Except as otherwise provided in this subsection, if—

(A) a child (as defined in section 151 (c) (3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the 'custodial parent').

(2) Exception where custodial parent releases claim to exemption for the year

A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year. For purposes of this subsection, the term 'noncustodial parent' means the parent who is not the custodial parent.

financial responsibilities of the parties.[2] The judgment provided that the sole child of the marriage, although committed to the joint custody of the parties, would reside with the defendant, subject to the plaintiff's visitation rights. The judgment also obligated the plaintiff to pay $95 per week in child support and one dollar per year in alimony, and ordered him to provide medical insurance for the child and to pay one half of any unreimbursed medical expenses. In return, the trial court allocated the federal income tax exemption for the child to the plaintiff.[3] It is this last provision of the

(3) Exception for multiple-support agreement

This subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c).

(4) Exception for certain pre-1985 instruments

(A) In General

A child of parents described in paragraph (1) shall be treated as having received over half his support during a calendar year from the noncustodial parent if—

(i) a qualified pre-1985 instrument between the parents applicable to the taxable year beginning in such calendar year provides that the noncustodial parent shall be entitled to any deduction allowable under section 151 for such child, and

(ii) the noncustodial parent provides at least $600 for the support of such child during such calendar year. For purposes of this subparagraph, amounts expended for the support of a child or children shall be treated as received from the noncustodial parent to the extent that such parent provided amounts for such support.

(B) Qualified pre-1985 instrument

For purposes of this paragraph, the term 'qualified pre-1985 instrument' means any decree of divorce or separate maintenance or written agreement—

(i) which is executed before January 1, 1985,

(ii) which on such date contains the provision described in subparagraph (A) (i), and

(iii) which is not modified on or after such date in a modification which expressly provides that this paragraph shall not apply to such decree or agreement."

[2] The judgment also contained provisions, not relevant to this appeal, disposing of certain marital assets and liabilities.

[3] The authority of the trial court to make this order derives from General Statutes § 46b-84 (d), which provides in pertinent part: "After the granting of a decree annulling or dissolving the marriage . . . the court shall

judgment that the defendant challenges on appeal. We transferred this case here pursuant to Practice Book § 4023, and find no error.

The trial court implemented its decision to allocate the dependent child exemption to the plaintiff by ordering the defendant annually to execute a written declaration that she would not claim the exemption.[4] The function of this order was to enable the plaintiff to comply with § 152 (e) (2), which requires that a noncustodial parent claiming the exemption attach to the income tax return such a waiver from the custodial parent.

The defendant attacks the validity of this order on two grounds. First, she argues that, as a matter of federal law, the allocation is invalid because Congress, by enacting the 1984 amendments to § 152 (e), preempted state law from allocating the exemption to a noncustodial parent. Second, she argues that, as a matter of state law, the order requiring her to execute the documentation to enable the plaintiff to claim the exemption invoked an equitable remedy that was inappropriate because of the availability of a less intrusive remedy.

I

The defendant's first and central contention is that the 1984 amendments to § 152 (e) divest state courts of the authority to allocate the dependent child exemption. In support of this position, she argues that the amendments manifest a congressional intent to confer a tax benefit upon custodial parents that can be

---

inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just . . . . ''

[4] At oral argument, the parties agreed that the trial court's order would require the defendant to execute a separate declaration for each tax year, rather than a single permanent declaration.

tranferred to noncustodial parents only upon the voluntary consent of a custodial parent. According to this analysis, the trial court's order allocating the exemption to the plaintiff is invalid since it is inconsistent with the objectives of § 152 (e). We are not persuaded.

The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. U.S. Const., art. VI.[5] Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. *Northwest Central Pipeline Corporation* v. *State Corporation Commission of Kansas,* 489 U.S. , 109 S. Ct. 1262, 1273, 103 L. Ed. 2d 509 (1989). The United States Supreme Court has instructed us that, absent an explicit statement that Congress intends to preempt state law, courts should "infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, *Rice* v. *Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947), or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142–143, 83 S. Ct. 1210, 1217–18, 10 L. Ed. 2d 248 [reh. denied, 374 U.S. 858, 83 S. Ct. 1861, 10 L. Ed. 2d 1082] (1963), or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives, *Hines* v. *Davidowitz,* 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 581 (1941)." *Northwest Central Pipeline Corporation* v. *State Corporation Commission of Kansas,* supra,

---

[5] Article six, clause 2, of the constitution of the United States provides in pertinent part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

1273; see also *Times Mirror Co.* v. *Division of Public Utility Control,* 192 Conn. 506, 510–12, 473 A.2d 768 (1984).

The defendant concedes that the sole element of the preemption analysis at issue in this case is whether the trial court's order stands as an obstacle to the objectives of the 1984 amendments to § 152 (e). Congress has not expressly prohibited state courts from allocating the dependent child exemption, since neither the statute nor the legislative history of the 1984 amendments makes any reference whatsoever to the practice. Likewise, Congress has manifested no intent to occupy the field of domestic relations. Finally, the defendant has alleged no inconsistency between the trial court's order and the statute that would prevent the defendant from complying with both.

Our analysis of whether state law frustrates the purpose of § 152 (e) must start from certain well established principles of federal law. The United States Supreme Court has repeatedly held that, because the field of domestic relations has traditionally been regulated by the states, the standard for demonstrating a preempting conflict between federal law and a state domestic relations provision is high: "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted. *Wetmore* v. *Markoe,* 196 U.S. 68, 77, [25 S. Ct. 172, 49 L. Ed. 390] (1904). A mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden. *United States* v. *Yazell,* 382 U.S. 341, 352, [86 S. Ct. 500, 15 L. Ed. 2d 404] (1966)." *Hisquierdo* v. *Hisquierdo,* 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979); see

also *Mansell* v. *Mansell*, U.S. , 109 S. Ct. 2023, 2027–28, 104 L. Ed. 2d 675 (1989); *McCarty* v. *McCarty*, 453 U.S. 210, 220, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981).

The question before us is whether, in light of these precedents, the 1984 amendments to § 152 (e) manifest federal interests that would suffer "major damage" by enforcement of the trial court's order in this case.[6] The amendments eliminated two of the exceptions to the general rule that the custodial parent is entitled to the dependent child exemption and substituted in their place the current provision allowing the noncustodial parent to claim the exemption only if the custodial parent executes a declaration promising not to claim the exemption. The first exception formerly allowed the noncustodial parent to claim the exemption if a divorce decree or written agreement

---

[6] Prior to the 1984 amendments, 26 U.S.C. § 152 (e), Pub. L. No. 90-78, 81 Stat. 191–92 (1967), provided in pertinent part: "(e) SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ETC.

(1) General rule

If—

(A) a child (as defined in section 151 (e) (3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

(2) Special rule

The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

(A) (i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

allocated the exemption to the noncustodial parent, provided that the noncustodial parent paid at least $600 per year in child support. The second exception formerly allocated the exemption to the noncustodial parent in cases where the noncustodial parent paid child support in an amount exceeding the amount contributed by the custodial parent and not less than $1200 per year. The amendments did not modify an existing exception for multiple support agreements, but did establish an additional exception for cases in which a divorce decree entered prior to January 1, 1985, had allocated the exemption to a noncustodial parent.

The defendant urges us to interpret these amendments as evidencing a federal purpose to confer a tax benefit upon custodial parents that can be transferred to a noncustodial parent only if the custodial parent waives the right to claim it. The principal argument in support of the defendant's position is that, since the

---

(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or

(B) (i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for each of such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For the purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.

(3) Itemized statements required

If a taxpayer claims that paragraph (2) (B) applies with respect to a child for a calendar year and the other parent claims that paragraph (2) (B) (i) is not satisfied or claims to have provided more for the support of such child during such calendar year than the taxpayer, each parent shall be entitled to receive, under regulations to be prescribed by the Secretary, an itemized statement of the expenditures upon which the other parent's claim of support is based.

(4) Exception for multiple-support agreement

The provisions of this subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c)."

1984 amendments to § 152 (e) explicitly defined certain exceptions to the general rule that custodial parents may claim the exemption, state courts may not allocate the exemption to noncustodial parents under circumstances in which none of the defined exceptions are applicable. A number of state courts that have examined the issue have found this argument persuasive. *Holley* v. *Holley,* 547 So. 2d 192, 193 (Fla. App. 1989); *In re Marriage of Davidson,* 540 N.E.2d 641, 647 (Ind. App. 1989); *Varga* v. *Varga,* 173 Mich. App. 411, 417–19, 434 N.W.2d 152 (1988); *Gerardy* v. *Gerardy,* 406 N.W.2d 10, 13–14 (Minn. App. 1987); *Gleason* v. *Michlitsch,* 82 Or. App. 688, 692–93, 728 P.2d 965 (1986); *Josey* v. *Josey,* 291 S.C. 26, 33, 351 S.E.2d 891 (1986); *Brandriet* v. *Larsen,* 442 N.W.2d 455, 459–60 (S.D. 1989); *Sarver* v. *Dathe,* 439 N.W.2d 548, 551–52 (S.D. 1989); *Davis* v. *Fair,* 707 S.W.2d 711, 717–18 (Tex. App. 1986). This argument fails, however, to recognize the significance of the fact that state courts have been allocating the exemption for decades. Moreover, as the defendant concedes, state courts developed the practice long before the Internal Revenue Code made explicit reference to it by adopting the first version of § 152 (e) in 1967. In light of the great deference accorded to state courts in the area of domestic relations, we are persuaded, as the courts in a significant number of jurisdictions have held; *Lincoln* v. *Lincoln,* 155 Ariz. 272, 275–76, 746 P.2d 13 (Ariz. App. 1987); *In re Marriage of Einhorn,* 178 Ill. App. 3d 212, 223–25, 533 N.E.2d 29 (1988); *Hart* v. *Hart,* 774 S.W.2d 455, 457 (Ky. App. 1989); *Wassif* v. *Wassif,* 77 Md. App. 750, 759–61, 551 A.2d 935 (1989); *Bailey* v. *Bailey,* 27 Mass. App. 502, 504–505, 540 N.E.2d 187 (1989); *Corey* v. *Corey,* 712 S.W.2d 708, 710–11 (Mo. App. 1986); *In re Marriage of Milesnick,* 765 P.2d 751, 753–54 (Mont. 1988); *Gwodz* v. *Gwodz,* 234 N.J. Super. 56, 60–61, 560 A.2d 85 (App. Div. 1989); *Fleck* v. *Fleck,* 427 N.W.2d

355, 359 (N.D. 1988); *Hughes* v. *Hughes,* 35 Ohio St. 3d 165, 166–68, 518 N.E.2d 1213 (1988); *In re Marriage of Peacock,* 54 Wash. App. 12, 16, 771 P.2d 767 (1989); *Cross* v. *Cross,* 363 S.E.2d 449, 457–59 (W.Va. 1987); *Marriage of Pergolski* v. *Pergolski,* 143 Wis. 2d 166, 172–73, 420 N.W.2d 414 (Wis. App. 1988); that Congress would have explicitly prohibited states from allocating the exemption if it had intended to do so.

The defendant attempts to refute this conclusion by placing great emphasis on the elimination of the explicit reference to state court decrees allocating the exemption. The legislative history of the amendments, however, does not support the defendant's contention. Under the section entitled "Reasons for Change," the House Report states: "The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service." H.R. Rep. No. 432, 98th Cong., 2d Sess., Pt. II, reprinted in 1984 U.S. Code Cong. & Admin. News 697, 1140. This statement makes it clear, and the defendant cites nothing to the contrary, that the purpose of the 1984 amendments was to extricate the Internal Revenue Service from the burdensome administrative function of determining the value of the child support contributions of the parties. The amendments accom-

plished this purpose by eliminating the exceptions that required a determination of how much the parties contributed. Thus, under the current version of § 152 (e), the Internal Revenue Service no longer need determine whether a noncustodial parent to whom a state court has allocated the exemption has made child support contributions worth at least $600. In addition, the amendments eased the administrative burden on the Internal Revenue Service by requiring that a noncustodial parent claiming the exemption attach a declaration from the custodial parent promising not to claim the exemption, thereby ensuring that both parents could not simultaneously claim the exemption.

The trial court's order in no way frustrates the congressional objective of eliminating the involvement of the Internal Revenue Service in disputes concerning the allocation of the dependent child exemption. Under the order, the allocation is made without any involvement by the Internal Revenue Service. The trial court's allocation imposes no cost on the federal government but rather facilitates the goal of administrative certainty by requiring that the defendant execute a declaration indicating that she will not claim the exemption. Since we find no conflict between § 152 (e) and the trial court's order, we conclude that § 152 (e) is not preemptive of the practice of allocating the dependent child exemption.

## II

The defendant also challenges the trial court's order requiring her to execute the requisite documentation to enable the plaintiff to claim the dependent child exemption on the ground that the trial court could have fashioned an adequate legal remedy without resorting to equity. Specifically, she argues that the trial court could have achieved its objective by simply reducing the plaintiff's child support obligation by an amount

equivalent to the amount of tax savings that he would realize if he could claim the exemption. We note preliminarily that the defendant's preference for a revised monetary allocation would also invoke the court's equitable jurisdiction. On the merits, furthermore, we are not persuaded by the defendant's argument.

As we have consistently reaffirmed, actions for dissolution of marriage are inherently equitable proceedings. *Sunbury* v. *Sunbury,* 210 Conn. 170, 174, 553 A.2d 612 (1989); *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835 (1975); *German* v. *German,* 122 Conn. 155, 161, 188 A. 429 (1936). As we stated in *Pasquariello* v. *Pasquariello,* supra, 585, "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . ." The trial court therefore did not commit error by exercising its equity jurisdiction in an attempt to fashion a just remedy under the circumstances of this case.

The facts in the present case demonstrate that the court exercised its equitable discretion appropriately. The plaintiff derives an economic advantage from having the dependent child exemption since he earns income against which he can claim the exemption in calculating his federal tax liability. The defendant, on the other hand, currently has no taxable income against which she could apply the exemption. Although the defendant will suffer no loss in benefits from a reduction in the plaintiff's support obligation, since the defendant is guaranteed a continuous level of welfare benefits, the state, which is reimbursed for those welfare payments out of the plaintiff's support payments, will bear a greater burden. The trial court's decision to allocate the exemption to the plaintiff has the fur-

ther advantage of providing an incentive for the plaintiff to keep current in his support payments since the defendant can refuse to execute the declaration for any tax year during which the plaintiff has failed to make support payments. The trial court's allocation of the exemption to the plaintiff was therefore not erroneous.

There is no error.

In this opinion the other justices concurred.