[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Lovejoy, Heffernan, Rimer for plaintiff.
Williams, Cooney Scully for defendant. CT Page 11247
On March 9, 1994, the plaintiffs, Annmarie Barton and her minor son, Nemesio Garcia, filed a three count revised complaint against the defendant, James Wheeler. The facts as alleged in the plaintiffs' revised complaint are as follows.
The defendant presently owns a multi-family dwelling located at 19-21 Putnam Avenue in Norwalk. The defendant purchased the property in 1964 and has controlled, maintained, painted and rented the apartment units from that time to the present date. On May 1, 1991, the defendant rented Apartment 1, located at 19 Putnam Avenue, to the plaintiffs. The plaintiffs lived in the apartment from May 1, 1991 through April, 1992.
In April, 1992, Barton's minor son, Garcia, was hospitalized for severe lead poisoning, as a result of eating lead paint chips from the apartment. On April 27, 1992, the Norwalk Health Department inspected the plaintiffs' apartment at 19 Putnam Avenue and discovered flaking and peeling paint. On May 22, 1992, test results of paint samples taken at the time of inspection from the bedroom window sill and living room window indicated lead content in excess of the legal limit.
The plaintiffs' revised complaint alleges causes of actions for strict liability and negligence and claim a violation of General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA). Specifically, in the first count, the plaintiffs claim damages under a theory of strict liability based on the defendant's alleged violations of General Statutes §§ 47a-7, 47a-8
and 47a-54f, as well as § 59-4G of the Code of the City of Norwalk (lead paint statutes). In the second count, the plaintiffs allege that the defendant was negligent in failing to comply with the lead paint statutes. Finally, in the third count, the plaintiffs allege that the defendant's violation of the lead paint statutes constitutes a violation of CUTPA.
On May 2, 1994, the defendant filed a motion (#116) to strike the plaintiffs' entire complaint on the ground that the plaintiffs' claims "are all expressly preempted pursuant to 42 U.S.C. § 4846, and the United States Constitution, Article VI, clause 2."
"`The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'" (Internal quotation marks CT Page 11248 omitted.) Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). "`In ruling on a motion to strike, the court is limited to the facts alleged in the complaint.'" Id., 215. Furthermore, "`[t]he court must construe the facts in the complaint most favorably to the plaintiff.'" Id. A motion to strike that imparts facts outside the pleadings is a "speaking motion to strike" and will not be granted. Connecticutstate Oil Co. v. Carbone, 36 Conn. Sup. 181, 182-83, 415 A.2d 771
(1979). Moreover, where the defendant's motion to strike is directed to the entire complaint, the motion will "fail if any of the plaintiff's claims are legally sufficient." Doyle v. A PRealty Corp., 36 Conn. Sup. 126, 127, 414 A.2d 204 (1980).
The defendant argues that the court should strike the plaintiffs' entire complaint because it "is preempted by operation of federal law, 42 U.S.C. § 4846, and by operation of the United States Constitution, Article VI, clause 2. . . ."
"`The question of preemption is one of federal law, arising under the supremacy clause of the United States Constitution. U.S. const., art. VI.'" Sharp v. Wyatt, Inc., 31 Conn. App. 824, 846,627 A.2d 1347 (1993), quoting Serrano v. Serrano, 213 Conn. 1, 5,566 A.2d 413 (1989). "Preemption analysis has two prongs. In order to conclude that state regulatory action has been preempted, it must be determined that (1) Congress has evidenced an intent to occupy the field or (2) the state regulation actually conflicts with federal law." (Citations omitted; internal quotation marks omitted.) Sharp v. Wyatt, Inc., supra, 846.
The Lead-Based Paint Poisoning Prevention Act (LPPPA), Title42 U.S.C. § 4846 provides that:
 [i]t is hereby expressly declared that it is the intent of the Congress to supersede any and all laws of the States and units of local government insofar as they may now or hereafter provide for a requirement, prohibition, or standard relating to the lead content
in paints or other similar surface-coating materials which differs from the provisions of this chapter or regulations issued pursuant to this chapter. Any law, regulation, or ordinance purporting to establish such different requirement, prohibition, or standard shall be null and void.
(Emphasis added.) Section 4822, which is also part of the LPPPA, CT Page 11249 states in part that:
 [t]he Secretary of Housing and Urban Development . . . shall establish procedures to eliminate as far as practicable the hazard of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary.
(Emphasis added.)
Connecticut General Statutes § 47a-8 provides in part that:
 [t]he presence of paint which does not conform to federal standards as required in accordance with the Lead-Based Paint Poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended, or of cracked, chipped, blistered, flaking, loose or peeling paint which constitutes a health hazard on accessible surfaces in any dwelling unit . . . intended for human habitation shall be construed to render such dwelling unit . . . unfit for human habitation and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7.
It therefore, appears that Congress has not evidenced an intent to occupy the entire field of lead-based paint poisoning. Rather, Congress has evidenced an intent to occupy the field of lead poisoning with respect to "any existing housing . . . which is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary." See 42 U.S.C. § 4822; see also Copeland v. People's Savings Bank,8 Conn. L. Rptr. 358, 360 (February 17, 1993, Thim, J.) 42 U.S.C. § 4822
et seq. provides for procedures to eliminate the hazards of lead-based paint to children who reside in federally-assisted housing).
Thus, LPPA preempts only state and local laws that establish the improper level of lead in paint at a different level than the LPPPA; it does not preempt state and local laws that seek to eliminate the hazards caused by other defective paint conditions, such as cracked or chipped paint. The standard for determining improper levels of lead in paint set forth in General Statutes § 47a-8 incorporates the federal standard for lead content and, therefore, the state standard is not in conflict with the LPPPA. CT Page 11250
Before this court can find that the plaintiffs' claims are preempted by federal law, it must first determine whether the dwelling at issue is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary of Housing and Urban Development. Since the plaintiffs did not allege that the defendant's property is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary of Housing and Urban Development, the court may not look beyond the complaint for facts necessary to make this determination. SeeNovametrix Medical Systems, Inc. v. BOC Group, Inc., supra.224 Conn. 215.
Accordingly, the defendant's motion to strike the plaintiffs' entire complaint is denied.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of November, 1994.
WILLIAM BURKE LEWIS, JUDGE