[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Citizens Regulatory Commission ("CRC"), is an organization of residents of southeastern Connecticut . . . Its mission is to raise questions about the safety of the Millstone Nuclear Power Generating Station located in Waterford, Connecticut." The defendant. Connecticut Department of Public Utility Control ("DPUC"), is a state agency established and authorized to act pursuant to General Statutes § 16-1 et seq.
On June 15, 1998, CRC filed a complaint pursuant to General Statutes § 16-12[1] with DPUC, alleging serious defects in the three nuclear generating plants comprising Millstone Station and unsafe operation of said plants by reason of which the public safety and the health and safety of employees is seriously CT Page 13972 endangered." On June 22, 1998, DPUC acknowledged receipt of CRC's complaint but declined to hold a hearing on the complaint pursuant to General Statutes § 16-13.[2]
CRC then filed the present petition in superior court on July 1, 1998, seeking an order of mandamus directing DPUC to hold a § 16-13 hearing on its June 15, 1998, complaint. CRC alleges that it possesses "a clear legal right to a hearing on the CRC complaint" and that DPUC is under "a clear legal duty to conduct a hearing on the CRC complaint" pursuant to § 16-13.
DPUC moves to dismiss CRC's petition for an order of mandamus for lack of subject matter jurisdiction on the grounds that the doctrine of federal preemption prevents it from acting upon CRC s complaint, the petition for mandamus relief is improper, and CRC has failed to exhaust its administrative remedies. CRC filed a memorandum in opposition to DPUC's motion to dismiss.
"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent . . . Serrano v. Sarrano, 213 Conn. 1, 5, 566 A.2d 413
(1989); see Northwest Central Pipeline Corp. v. State Corp.Commission of Kansas, 489 U.S. 493, 509, 109 S.Ct. 1262,103 L.Ed.2d 509 (1989). Preemption may be express or implied. Assn.of International Automobile Manufacturers, Inc. v. Abrams,84 F.3d 602, 607 (2d Cir. 1996). Express preemption occurs to the extent that a federal statute expressly directs that state law be ousted to some degree from a certain field . . . Even where there is no express statutory statement ousting state law from a given area, [however] there may be implied preemption . . . The United States Supreme Court has instructed us that, absent an explicit statement that Congress intends to preempt state law. courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, Rice v. SantaFe Elevator Corp. , 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447
(1947), or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, FloridaLime Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43,83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 [reh. denied, 374 U.S. 858,83 S.Ct. 1861. 10 L.Ed.2d 1082] (1963), or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives, Hines v. Davidowitz, 312 U.S. 5 67, 61
CT Page 13973 S.Ct. 399, 404, 85 L.Ed. 581 (1941)." (Citations omitted; internal quotation marks omitted.) Dowling v. Slotnik,244 Conn. 781, — A.2d — (1998).
A claim of federal preemption implicates a court's subject matter jurisdiction. See Shea v. First Federal Savings LoanAssn. of New Haven, 184 Conn. 285, 290, 439 A.2d 997 (1981) ("The Superior Court has jurisdiction of all matters expressly committed to it and of all other judicially cognizable matters not within the exclusive jurisdiction of [a federal forum]."). As such, preemption is properly raised by a motion to dismiss. See Practice Book § 10-30.
DPUC argues that under the doctrine of federal preemption, it has no jurisdiction to hold a hearing pursuant § 16-13
because jurisdiction over the safety aspects of nuclear energy power plants is exclusively reserved to the federal government. (Defendant's Memorandum, pp. 5-7.) Therefore, DPUC moves for a dismissal of the plaintiff's petition since "[t]his court has no more jurisdiction to order the DPUC to investigate the safety of the Millstone Nuclear Power Station than the DPUC has to conduct one — itself the State is simply preempted." (Defendant s Memorandum, p. 7.)
CRC argues in response that [t]he hearing required [by § 16-13] is not in the nature of a `regulatory' proceeding, and thus it cannot by its nature conflict with federal authority. Rather, the § 16-13 hearing is a forum at which information may be presented to DPUC concerning dangerous conditions of a public utility plant which may jeopardize public and employee health and safety." (Plaintiff's Memorandum, p. 6.) The CRC also argues that the federal government "does not in actuality occupy the field of regulation of the Millstone Nuclear Power Station exclusively" and therefore; the federal preemption doctrine is not a bar to the conduct of the mandatory statutory hearing pursuant to § 16-13." (Plaintiff's Memorandum, p. 12.)
The United States Supreme Court has expressly defined the extent to which Congress has preempted the field of nuclear safety. [F]rom the passage of the Atomic Energy Act in 1954, through several revisions, and to the present day, Congress has preserved the dual regulation of nuclear-powered electricity generation: the Federal Government maintains complete control of the safety and `nuclear' aspects of energy generation; the States exercise their traditional authority over the need for additional CT Page 13974 generating capacity, the type of generating facilities to be licensed, land use, ratemaking, and the like." Pacific Gas Electric Co. v. State Energy Resources Conservation andDevelopment Commission, 461 U.S. 190, 211-12, 103 S.Ct. 1713,75 L.Ed.2d 75 (1983). Thus, it is clear that "Congress intended that only the Federal Government should regulate the radiological safety aspects involved in the construction and operation of a nuclear plant." (Internal quotation marks omitted.) English v.General Electric Co., 496 U.S. 72, 82, 110 S.Ct. 2270.110 L.Ed.2d 65 (1990); see also Silkwood v. Kerr-McGee Corp. ,464 U.S. 238, 260, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) ("[T]he fundamental teaching of Pacific Gas is that state regulation of nuclear power is pre-empted to the extent that its purpose is to regulate safety."); Norris v. Lumbermen's Mutual Casualty Co., 881, F.2d 1144., [881 F.2d 1144,], 1149 (1st Cir. 1989) ("For our purposes, the teaching of [Pacific Gas] is clear. The Federal Government has preempted the field where the matter at issue directly involves nuclear safety concerns.").
"Congress' decision to prohibit the States from regulating the safety aspects of nuclear development was premised on its belief that the [Nuclear Regulatory] Commission was more qualified to determine what type of safety standards should be enacted in this complex area." Silkwood v. Kerr-McGee Corp. , supra,464 U.S. 250. Were [state agency], therefore, to be permitted to inject itself into the process in its attempt to `enhance' the safety of [a nuclear power facility], it would upset the balance envisioned in the Congressional scheme. For this reason, responsibility to regulate and enforce the safety aspects of nuclear energy power plants must remain the sole province of the NRC's expertise." County of Suffolk v. LongIsland Lighting Co., 728 F.2d 52, 60 (2nd Cir. 1984).
Contrary to CRC's assertion, the statute pursuant to which CRC desires DPUC to act, namely § 16-13, does not provide merely for an "informational" hearing to alert DPUC to dangerous conditions at public utility plants. Rather, the statute is on its face regulatory in nature, requiring DPUC to "make such further investigation into the alleged conditions as it deems necessary," and if DPUC finds the conditions to be dangerous to public safety or to the safety of employees. to "make such order as may be necessary to remedy the same." It is obvious from the plain language of the statute that its purpose is to regulate safety. Thus, because the statute's purpose is to regulate safety, Section 16-13 is preempted to the extent it is sought to CT Page 13975 be applied in the context of a complaint concerning the safety of a nuclear power facility.
Even if § 16-13 did provide merely for an informational hearing, however, CRC's argument that § 16-13 is not preempted because "[t]he mere holding of an informational hearing in no way conflicts with federal law;" (Plaintiff's Memorandum, p. 6); must fail. "State safety regulation is not pre-empted only when it conflicts with federal law. Rather, the Federal Government has occupied the entire field of nuclear safety concerns . . . When the Federal Government completely occupies a given field or an identifiable portion of it, as it has done here, the test of pre-preemption is whether `the matter on which the State asserts the right to act is in any way regulated by the Federal Act.' Rice v. Santa Fe Elevator Corp. , 331 U.S. [218, 236
(1947)]." Pacific Gas Electric Co. v. State Energy ResourcesConservation and Development Commission, supra, 461 U.S. 212-13. In matters of nuclear safety, the Nuclear Regulatory Commission, the federal agency charged with exercising regulatory authority under the Atomic Energy Act and its subsequent revisions and amendments, has "promulgated extensive and detailed regulations concerning the operation of nuclear facilities and the handling of nuclear materials." Id. 217. Therefore, it is irrelevant whether § 16-13 conflicts with federal regulations: "If Congress has [entirely] occupied a particular field, courts may not enforce even consistent or complementary state laws in the occupied area." Shea v. First Federal Savings Loan Assn. of NewHaven, supra, 184 Conn. 293. Because the matter upon which CRC seeks action by DPUC directly concerns the operational safety of a nuclear power facility, a matter upon which the federal government heavily regulates, the test of preemption is met and DPUC is without jurisdictional authority to act upon CRC s complaint pursuant to § 16-13.
"`Mandamus is an extraordinary remedy designed to enforce the performance of a plain positive duty, and, as such, the writ will properly issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled.'Juliano v. Farrell, 196 Conn. 283, 286. 492 A.2d 187 (1985)."Porter v. East Hampton, 18 Conn. App. 312, 313, 557 A.2d 932
(1989). Under the standard of preemption enunciated by the Supreme Court in Pacific Gas Electric Co. v. State EnergyResources Conservation and Development Commission, supra,461 U.S. 190, a court-ordered investigation by DPUC into the alleged dangerous conditions of the Millstone Nuclear Power Generating CT Page 13976 Station would invade the NRC's exclusive regulatory province. Because DPUC lacks authority in this instance to carry out the statutory obligations imposed by § 16-13, the plaintiff's petition for a writ of mandamus must be dismissed. See Porter v.East Hampton, supra, 18 Conn. App. 313.
The defendant's motion to dismiss for lack of subject matter jurisdiction is granted on the ground that the doctrine of federal preemption prohibits the defendant from acting upon the plaintiff's complaint. For this reason, it is unnecessary to consider the alternate grounds for dismissal advanced by the defendant.
So ordered,
John J. Langenbach