**Fred E. HUDSPETH, et al.,
Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Respondent–Appellee.**

No. 88–7040.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1990.

Decided Sept. 13, 1990.

Clarence H. Greenwood, Rappleyea, Beck, Helterline & Roskie, Portland, Oregon, for petitioners-appellants.

Gary R. Allen, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BROWNING and ALARCON, Circuit Judges, and TEVRIZIAN, District Judge.*

TEVRIZIAN, District Judge:

## PRELIMINARY STATEMENT

This case presents questions concerning the proper interpretation of the tax benefit rule and Federal Rule of Evidence 408. We hold that the tax court properly construed the tax benefit rule. However, the tax court erroneously excluded certain evidence that should have been admitted under the bias exception to Federal Rule of Evidence 408.

## FACTS

The appellants are shareholders of Hudspeth Pine, Inc., which, during the period relevant to the present case, was a validly electing Subchapter S corporation pursuant to Subchapter S of the Internal Revenue Code. I.R.C. § 1361 *et seq.*

At all relevant times, taxpayers/appellants John and Floreine Hudspeth owned 75% of the stock and bonds issued by Hudspeth Pine, Inc.; taxpayers/appellants Fred and Margaret Hudspeth owned the remaining 25% of the stock and bonds issued by Hudspeth Pine. (Hereinafter, appellants will be referred to collectively as "Taxpayers.")

In 1966, the Taxpayers' basis in their Hudspeth Pine stock and bonds were as follows:

|  | Basis in Stock | Basis in Bonds |
| --- | --- | --- |
| John and Floreine Hudspeth | $439,634.04 | $217,262.83 |
| Fred and Margaret Hudspeth | 146,544.68 | 88,420.77 |

In the 1967 tax year, Hudspeth Pine suffered a tax loss of $613,683.45. Taxpayers John and Floreine Hudspeth's pro rata share of this 1967 Hudspeth Pine loss was $460,262.59. Taxpayers Fred and Margaret Hudspeth's pro rata share of the Hudspeth Pine loss was $153,420.86. The Taxpayers claimed deductions for their respective shares of the Hudspeth Pine loss on their individual 1967 tax returns. Apparently, neither John and Floreine Hudspeth nor Fred and Margaret Hudspeth received a tax benefit for the full amount of their pro rata share of the loss.[1]

In 1973, the Hudspeth bonds were redeemed. The present dispute involves the issue of whether an adjustment should be made to the Taxpayers' basis in the stock and bonds on account of the 1967 loss. Any basis adjustments will affect the tax treatment of the bond redemption to the individual taxpayers.

There is also a dispute as to the Taxpayers' liability for the tax years ending May 31, 1973 and May 31, 1974. During Hudspeth Pine's 1973 and 1974 tax years, Hudspeth Pine was engaged in the manufacture of lumber and related products. Prior to and during the taxable years at issue,

---

* Honorable Dickran Tevrizian, United States District Judge for the Central District of California, sitting by designation.

1. The Taxpayers allege that Fred and Margaret Hudspeth did not receive any benefit from $12,671 of their $153,420.86 share of the 1967 Hudspeth Pine loss. The Taxpayers also contend that John and Floreine Hudspeth did not receive any tax benefit for $314,610.00 of their $460,262.59 share of the 1967 Hudspeth Pine loss.

Hudspeth Pine had made an I.R.C. § 631(a) election which required that the fair market value of lumber harvested in the taxable year be determined as of the first day of the taxable year.

During the taxable year ended May 31, 1973, Hudspeth Pine harvested timber which qualified for treatment under I.R.C. § 631(a). Hudspeth Pine harvested 26,602.-28 MBF [2] of pine and 12,139.20 MBF of fir which qualified for capital gain treatment under I.R.C. § 631(a).

The Taxpayers and the Commissioner of the Internal Revenue Service (hereinafter "Commissioner") dispute the fair market value of the pine and fir. The Taxpayers claim that the fair market value of the pine and fir is substantially higher than the Commissioner's valuation. The Taxpayers desire a higher valuation in order to take advantage of the more favorable capital gain tax rates.

During the taxable year ended May 31, 1974, Hudspeth Pine harvested 29,312.79 MBF of pine and 12,296.18 MBF of fir which qualified for capital gain treatment under I.R.C. § 631(a). The Taxpayers and the Commissioner also dispute the fair market value of the fir and pine for this taxable year; the Taxpayers claimed a higher value for the pine and fir than the Commissioner.

The Commissioner issued a notice of deficiency to Fred and Margaret Hudspeth asserting a deficiency in their individual joint income tax for the 1973 tax year. The Taxpayers filed a timely petition in the tax court contesting this deficiency.

The Commissioner also issued notices of deficiency to Taxpayers John and Floreine Hudspeth which asserted deficiencies in their individual joint income tax for the 1973, 1974, and 1975 tax years. John and Floreine Hudspeth filed timely petitions in the tax court contesting each deficiency notice.

In connection with the Taxpayers' preparation for trial before the tax court, the Taxpayers retained an expert in the valuation of standing timber, Mr. Gail Thomas. Mr. Thomas submitted a report to the tax court which valued the timber in question.

In preparing the report, Mr. Thomas relied upon information that he possessed which concerned the valuation of standing timber for another taxpayer. Pine Products Corporation (hereinafter "Pine Products"). Mr. Thomas previously had been retained by Pine Products in connection with a dispute over the valuation of timber between Pine Products and the Commissioner. That case was eventually settled with no deficiency assessment against Pine Products. The final settlement contained substantially higher pine and fir values than those asserted by the Service in the Taxpayers' case.

Prior to trial, the Commissioner moved for the exclusion of the Pine Products valuation data that Mr. Thomas had used. Counsel for the Taxpayers opposed that motion. The tax court granted the Commissioner's motion to exclude the valuation data from the trial on May 14, 1984.

The Taxpayers' case was tried on May 15 to 16, 1984. The tax court issued its formal written decision on December 30, 1985. The tax court upheld the position of the Commissioner with regard to the basis adjustment issue. It also decided the timber valuation issue in the Commissioner's favor. The decision of the tax court was entered on September 30, 1987, after tax court Rule 155 calculations were completed.

The Taxpayers mailed a notice of appeal on December 28, 1987. The notice was filed timely on December 30, 1987. *See* I.R.C. §§ 7483, 7502.[3]

---

2. "MBF" is a unit of measure used to describe timber value, and is equivalent to a thousand board feet of timber Scribner scale.

3. The postmark date is deemed to be the day of filing. I.R.C. § 7502(a)(1).

## DISCUSSION

### A. *The Tax Benefit Rule* [4]

■ One of the controversies in this case stems from a dispute over whether the Taxpayers were required to adjust their basis in their Hudspeth Pine stock and bonds pursuant to I.R.C. § 1376.

During the years relevant to this case, the Taxpayers were the sole shareholders of Hudspeth Pine. From 1962 until the fiscal year ended May 31, 1975, Hudspeth Pine was a validly electing small business corporation subject to the provisions of Subchapter S of the Internal Revenue Code.

Corporations which elect to be treated as small business corporations under the provisions of Subchapter S receive tax treatment that is similar to that of partnerships. Shareholders of a Subchapter S corporation are required to include their respective pro rata shares of the undistributed taxable income of the corporation as part of their gross income on their individual income tax returns. I.R.C. § 1373. In addition, shareholders in a Subchapter S corporation can deduct their pro rata share of any net operating loss of the corporation on their individual tax returns. I.R.C. § 1374.

Consistent with the tax treatment contained in I.R.C. § 1373 and I.R.C. § 1374, I.R.C. § 1376 provided that a shareholder had to make certain adjustments to the shareholder's basis in his or her stock and bonds in order to reflect the pass through of corporate profits and losses. Under I.R.C. § 1376(a), the basis of the shareholder's stock was increased by the amount of any undistributed corporate income which the shareholder was required to recognize as income pursuant to I.R.C. § 1373(b). Conversely, I.R.C. § 1376(b)(1) provided that if a net operating loss was passed through to a shareholder, the net operating loss would reduce the basis of the shareholder's stock (but not below zero). Additionally, if the loss exceeded the basis of the stock, any excess loss was applied to reduce the basis (but not below zero) of any corporate indebtedness held by the shareholder. I.R.C. § 1376(b)(2).

The purpose of § 1376(a) was to prevent a double taxation of income. If there was no basis adjustment, the taxpayer would be liable for tax on the pro rata share of income of the corporation and would also be liable for tax upon gain from a sale of the stock, to the extent that earnings and profits were not distributed to the taxpayer.

I.R.C. § 1376(b) is intended to prevent a double deduction. In the case of a loss, the taxpayer is entitled to deduct the net operating loss on his or her tax return. If § 1376(b) were not present, the taxpayer could also have deducted a capital loss on the sale of any stock because such loss would not be incorporated into the basis of the stock; rather it would have been incorporated into the market value of the stock.[5]

In the present case, I.R.C. § 1376 required the Taxpayers to reduce the basis of their stock and bonds in the amount of their pro rata share of the net operating loss. In the case of John and Floreine Hudspeth, they had a 1966 basis of $439,634.00 in their Hudspeth Pine stock and a 1966 basis of $217,263.00 in their Hudspeth Pine bond. Under I.R.C. § 1376, their basis in the stock would be reduced to zero and the remaining loss of $20,629.00 would be applied to reduce their basis in the bond.

In the case of Fred and Margaret Hudspeth, these appellants had a 1966 basis in their stock of $146,545.00 and a 1966 basis in their bond of $88,421.00. Under I.R.C. § 1376, their basis in the stock would be

---

**4.** All references to Internal Revenue Code sections in this case will be references to the Internal Revenue Code of 1954 which is the law relevant to this case.

**5.** For example, suppose a taxpayer established a Subchapter S corporation with an initial capital investment of $200,000. Assume that the corporation lost $100,000 in its first year. Taxpayer could deduct the $100,000 loss pursuant to I.R.C. § 1374. Given the loss of $100,000, the value of the corporation is $100,000. However, if the taxpayer was not required to adjust his basis in the stock to reflect the loss, his basis would remain at $200,000. If taxpayer then sold his interest in the company, he would receive the $100,000 value of the company. He would then claim a $100,000 capital loss since his basis in his interest in the company was $200,000.

reduced to zero and the remaining loss of $6,876.00 would be applied to reduce their basis in the bond. The tax court held that the Taxpayers were required to make the basis adjustments in their stock and bonds called for in I.R.C. § 1376.

The problem that arises in this case is that the Taxpayers did not receive the full benefit of their net operating loss deduction either in the 1967 tax year or in successive tax years. The Taxpayers contend that the tax benefit rule should operate to prevent the I.R.C. § 1376 basis adjustments to the extent that the Taxpayers did not receive a tax benefit from the deductions.

This contention is appealing on its face. The purpose of I.R.C. § 1376 is to adjust the basis of the stock and bonds in order to reflect the economic impact of a gain or loss on the value of the Subchapter S corporation's stock and bonds. For tax purposes, there would seem to be no reason to adjust the basis if the Taxpayer did not receive any benefit from the loss.

The tax benefit rule is a judicially developed doctrine designed to ameliorate some of the effects of the year-end accounting system that the tax system utilizes. The tax benefit rule has two components, a rule of inclusion and a rule of exclusion. The inclusionary component of the rule requires the taxpayer to recognize income when an event occurs that is fundamentally inconsistent with the premise on which a deduction previously had been based. *Hillsboro Nat. Bank v. CIR*, 460 U.S. 370, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983) (*Hillsboro*). The exclusionary aspect of the tax benefit rule requires a taxpayer to include income only to the extent that a deduction gave rise to a tax benefit. *Hillsboro*, 460 U.S. at 388, 103 S.Ct. at 1145.

Although the tax benefit rule would seem to logically exclude the gain on the redemption of the bonds to the extent that the Taxpayers did not receive a tax benefit, it is not appropriate to apply the tax benefit rule in this case. In the first place, the application of the tax benefit rule to the present case would render the net operating loss provisions of I.R.C. § 172(b)(1)(A) and (B) a nullity. The version of I.R.C. § 172 in effect during the period relevant to this case allowed an individual to carry back for three years and carry forward for five years net operating losses. If the Taxpayers are allowed to use the tax benefit rule in the present case, they effectively would be allowed to carry forward the net operating loss beyond the five year carry forward period. Theoretically, they would be able to carry the loss forward indefinitely, recovering the benefit of the loss upon the disposition of their stock and/or bonds.

The Taxpayers rely on *Dobson v. Comm.*, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943) (*Dobson*), and *Ridge Realization Corp. v. CIR*, 45 T.C. 508 (1966) (*Ridge Realization*), to support their position. However, neither *Dobson* nor *Ridge Realization* assist the Taxpayers' case. In both of these cases, the Commissioner's adjustment to the Taxpayer's basis was based on I.R.C. § 113.[6] Section 113 provided that " 'Proper adjustment ... shall in all cases be made' for the items named if 'properly chargeable to capital account.' " *Dobson*, 320 U.S. at 504, 64 S.Ct. at 247–48. There were no provisions specifying what constituted a "proper adjustment." In the present case, however, I.R.C. § 1376 specifies what adjustments are to be made to the basis of Taxpayers' stock and bonds. Indeed, the court in *Dobson* specifically noted that I.R.C. § 113 did "not specify the circumstances or manner in which adjustment of the basis are to be made ..." *Dobson*, 320 U.S. at 503–04, 64 S.Ct. at 247.

█ Finally, the Taxpayers assert that I.R.C. § 111 and Treas.Reg. § 1.111–1(a) required the tax court to apply the exclusionary part of the tax benefit rule to the Taxpayers' case. We reject this argument. While § 111 does not limit the scope of the tax benefit rule to bad debts, prior taxes or delinquent amounts, *Hillsboro* 460 U.S. at 388, 103 S.Ct. at 1145, the tax benefit rule *is* limited to cases in which a later event turns out to be fundamentally inconsistent with the premise on which the deduction

6. I.R.C. § 113 is the predecessor of the present    I.R.C. § 165.

was initially based. *Id.* at 383, 103 S.Ct. at 1143. Thus, where the subsequent event was not inconsistent with an earlier one, the Court held that a specific, contradictory provision of the Code would not be subject to the tax benefit rule. *Id.* at 389–90, 103 S.Ct. at 1146, *citing Nash v. United States,* 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1 (1970). Here, when the Taxpayers realized income upon the redemption of their bonds, there was no fundamental inconsistency with the original deductions, which were based only on the corporation's net losses. Therefore, the tax benefit rule partially codified in § 111 does not apply.

Therefore, the tax court was not in error in holding that the tax benefit rule did not apply to the present case.

### B. *The Exclusion of the Pine Products Valuation Data*

#### 1. Standard of Review

The Taxpayers argue that this court should review the tax court's evidentiary decisions *de novo.* The Taxpayers contend that the trial court excluded the evidence of the Pine Products timber valuation on grounds "separate and apart from the Rules of Evidence." Consequently, the Taxpayers believe that a *de novo* review of the tax court's evidentiary determination is warranted. However, the appellants' contention is not supported by the record. The tax court based its decision on the relevancy of the evidence presented. Thus, the tax court excluded the evidence on the basis of Federal Rule of Evidence 402.

■ The tax court's evidentiary decisions regarding the admissions of evidence are reviewed for abuse of discretion. *Brocklesby v. United States,* 767 F.2d 1288, 1292 n. 1 (9th Cir.1985), *cert. denied* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986), *citing Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1258 n. 5 (9th Cir.1984).

#### 2. Federal Rule of Evidence 408

The Taxpayers contend that the tax court's ruling excluding the evidence of the Pine Products' valuation data was erroneous and that the evidence should have been admitted to prove the value of the Hudspeth timber. However, Federal Rule of Evidence 408 provides, in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.[7]

■ The Taxpayers contend that Rule 408 is inapplicable to the present case because they were not parties to the Pine Products settlement and the claims involved in the present case are not the same claims that were involved in the Pine Products case. The Taxpayers' contention that Rule 408 does not apply when third party compromises are involved is not tenable. Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise. *United States v. Contra Costa County Water District,* 678 F.2d 90, 92 (9th Cir.1982) (*Contra Costa* ).

■ Two principles underlie Rule 408: (1) "[t]he evidence [of compromise] is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position;" (2) "[a] more consistently impressive ground is pro-

---

7. Although the Tax Court did not base its ruling excluding the Pine Products valuation data on Federal Rule of Evidence 408, we may affirm on any basis that has legal merit and factual support in the record. *Lofton v. Heckler,* 781 F.2d 1390, 1392. (9th Cir.1986).

motion of the public policy favoring the compromise and settlement of disputes."[8] Fed.R.Evid. 408 advisory committee's note. Admitting the Pine Products valuation data to prove the Taxpayers' valuation of the timber would undermine the policies underlying Rule 408. Settlements by the Commissioner would be inhibited if the Commissioner would have to review whether a settlement could be binding in subsequent cases. The tax court was not in error in excluding the Pine Products valuation data as evidence of the value of the Hudspeth timber.

■ The Taxpayers also sought to admit the Pine Products valuation data for the purpose of showing bias on the part of the Commissioner. Rule 408 specifically provides for the admissibility of compromise and settlement negotiations for the purpose of showing bias or prejudice of a witness.

In both the Pine Products case and the Taxpayers' case, the same valuation expert handled the valuation issues.[9] However, the figures arrived at in the two cases were quite disparate even though the taxpayers in both cases were similarly situated.[10] The data was relevant to the issue of whether there was bias, especially given the wide disparity between the two figures[11] and should have been admitted by the trial court.

The trial court's reliance on *Greenberg's Express, Inc., et al. v. CIR*, 62 T.C. 324 (1974) was not well founded. In *Greenberg's Express* petitioners challenged the allegedly discriminatory manner in which they had been chosen for an examination leading to a deficiency notice. They did not challenge the accuracy or propriety of the notice itself. The tax court held evidence regarding the Commissioner's motives was irrelevant and hence inadmissible because petitioner's tax liability would be determined de novo at trial. *Id.* at 328. Here, petitioners challenged the accuracy of the deficiency notice, not the motives of the I.R.S. in issuing it.

While the Pine Products valuation data was irrelevant for the purpose of showing the value of the timber, the evidence was relevant to show bias on the part of Commissioner's valuation expert. Since the Commissioner's case hinged on the credibility and reliability of his valuation expert, the tax court's exclusion of the Pine Products valuation data was prejudicial. We hold that the tax court's refusal to consider the Pine Products valuation data

---

**8.** The Taxpayers attempt to distinguish their situation from the *Contra Costa* case by claiming that in the *Contra Costa* case the compromise involved the same factual situation. However, that distinction does not assist the Taxpayers in their case because the Taxpayers' case also involves the same factual situation. In both cases, the issue was the valuation of timber taken from the same forest and timber that was of similar quality.

**9.** The valuation expert for the Commissioner was Mr. Ken Taylor. Mr. Taylor approved the Pine Products timber values contained in the Pine Products settlement. Mr. Taylor was also the Commissioner's valuation expert for the Taxpayers' trial.

**10.** Both Pine Products and Hudspeth Pine purchased their timber from the same national forest. In addition, the Pine Products and Hudspeth Pine sawmills were located within two and one half miles of each other; they manufactured the same type of product; they sold through the same market; they used the same labor market; and they used the same transportation facilities. The Pine Products valuation

was made as of January 1, 1973, five months prior to the beginning of the 1974 Hudspeth fiscal year and seven months after the beginning of the 1973 Hudspeth fiscal year. Finally, the parties stipulated to the fact that the Service's settlement with Pine Products only concerned the valuation of the timber.

**11.** At trial, the Service contended that the Taxpayers' pine had a weighted average fair market value of $54.43 per MBF for the 1973 tax year. This value was less than 39% of the Pine Products settlement value. The Service contended that the Taxpayers' pine for the 1974 tax year had a weighted average fair market value of $94.65, a value less than 68% of the Pine Products pine value. With regard to the fir, the Service contended that the fir was worth a weighted average fair market value of $24.36 per MBF, a value of approximately 30% of the Pine Products settlement value. For the 1974 tax year, the Service recommended a weight average fair market value of $78.31 per MBF for the fir, approximately 96% of the value placed of the Pine Products fir.

was an abuse of discretion.[12]

### 3. Federal Rule of Evidence 703

 The Taxpayers also argue that the trial court's refusal to admit the Pine Products data as foundation evidence in support of Mr. Thomas's expert testimony constitutes an independent grounds for reversal of the trial court.

When the trial court excludes evidence, failure to make a timely invocation of the grounds for the admission of the evidence renders the issue reviewable only for plain error. Fed.R.Evid. 103(a)(2), (d); *cf. Brocklesby v. United States*, 767 F.2d 1288, 1293 n. 5 (9th Cir.1984).

In this case, the Taxpayers did not invoke Rule 703 as a grounds for admitting the Pine Products data until it filed its motion for reconsideration on January 2, 1987. This invocation was made over two years and six months after trial and cannot be considered timely. Thus, the tax court's evidentiary ruling can be reviewed only for plain error.

Rule 703 permits the admission of otherwise inadmissible evidence upon which an expert properly relies for the purpose of explaining the basis of the expert's opinion. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir.1984). An expert may properly rely on information that is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed. R.Evid. 703.

The tax court did not commit plain error in refusing to admit the Pine Products data. The Pine Products data was the result of a compromise agreement between the Commissioner and Pine Products. Given the fact that settlements are often consummated for reasons other than the merits of the case, the evidence might not be reasonably relied upon by experts.

### CONCLUSION

The tax court correctly held that the tax benefit rule did not apply to the Taxpayers' case. However, the tax court should have admitted Pine Products valuation data under the bias exception to Federal Rule of Evidence 408.

REVERSED and REMANDED.

---

**12.** This is especially true in light of the fact that the tax court tries its cases without a jury.