HOWARD D. and LACEY M. ARNAIZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Arnaiz v. Commissioner
Docket No. 824-91
United States Tax Court
T.C. Memo 1992-729; 1992 Tax Ct. Memo LEXIS 772; 64 T.C.M. (CCH) 1610; December 29, 1992, Filed *772 Decision will be entered for respondent. For Petitioners: Steven A. Malcoun. For Respondent: Dale A. Zusi. TANNENWALD
TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined additions to petitioners' income taxes for 1985 under sections 6651(a)(1) [1] and 6654 of $ 22,441 and $ 343 respectively. Petitioners have conceded the addition to tax under section 6654. The issue for decision is whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure timely to file their 1985 Federal income tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and the accompanying exhibits are incorporated herein by reference. Petitioners are husband and wife and maintained their legal residence in Stockton, California, *773 at the time they filed their petition. They filed a joint Federal income tax return for the taxable year 1985 with the Internal Revenue Service Center, Ogden, Utah. During the taxable year at issue, Howard Arnaiz (Mr. Arnaiz) possessed a 90-percent partnership interest in Arnaiz Development Company (Development). The remaining 10-percent interest in Development was owned by H. D. Arnaiz Corporation (HDAC). Petitioners owned 46 percent of HDAC. At all relevant times, Development possessed a 50-percent interest in the partnership known as F.H.A. Properties (FHA). FHA's principal asset consisted of a parcel of real property (FHA property) which it disposed of in 1985 in a transaction (1985 transaction) involving the sale or exchange, and the charitable contribution to St. Joseph's Hospital of Stockton (St. Joseph's), of portions of the FHA property. That disposition occurred pursuant to a Contract For Exchange of Real Property (Contract), entered into between FHA and St. Joseph's on April 30, 1985, which provided in pertinent part: RECITALS A. FHA is the owner of certain real property held by FHA for investment purposes and is more particularly described in Exhibit "A" and *774 is hereinafter called the "Real Property". B. ST. JOSEPH'S desires to acquire the Real Property from FHA in order to construct new health care facilities on the Real Property in order to enhance the quality medical care ST. JOSEPH'S can provide to the greater Stockton community. C. The Real Property has a fair market value of Five Million Six Hundred Sixty Thousand and 00/100 ($ 5,660,000.00). This fair market value was determined by Duncan, Duncan and Associates, MAI Appraisers, in an appraisal dated February 8, 1984 and up-dated April 25, 1985. D. ST. JOSEPH'S cannot afford to acquire the Real Property at the fair market value as determined by the Duncan appraisal. E. FHA is unwilling to sell the Real Property at a value less than the fair market value as determined by the Duncan appraisal. F. ST. JOSEPH'S has suggested that FHA consider a donation of a portion of the Real Property to ST. JOSEPH'S in order that ST. JOSEPH'S might acquire the Real Property for purposes of constructing new health care facilities. G. FHA has considered the request of ST. JOSEPH'S and has consented to donating to ST. JOSEPH'S an undivided .19735 interest in the Real Property with a fair *775 market value of One Million One Hundred Seventeen Thousand Dollars and 00/100 ($ 1,117,000.00), provided ST. JOSEPH'S agrees to accommodate FHA in effecting a tax deferred exchange of the remaining undivided .80265 interest in the Real Property under Internal Revenue Code Section 1031 and California Revenue and Taxation Code Section 18081 and provided further that ST. JOSEPH'S agrees the donation shall remain confidential and shall not be disclosed to any persons, entities, or organization other than its Board of Directors. NOW, THEREFORE, IT IS AGREED AS FOLLOWS: ARTICLE I
Amount of Purchase Price/Exchange Value
Section 1.01. The fair market value of the Real Property is Five Million Six Hundred Sixty Thousand Dollars and 00/100 ($ 5,660,000.00). A. Upon execution of this Exchange Agreement, ST. JOSEPH'S shall deposit with the escrowholder named hereafter, the sum of Fifty Thousand Dollars and 00/100 ($ 50,000.00). B. Prior to the close of escrow ST. JOSEPH'S shall deposit the additional sum of Three Hundred Thousand Dollars and 00/100 ($ 300,000.00) in cash in said escrow. C. ST. JOSEPH'S agrees to acquire real property to be designated by FHA (hereafter the "Target *776 Property") prior to the close of escrow for and in consideration of the transfer by FHA of an undivided .80265 interest in the Real Property having an exchange value of Four Million Five Hundred Forty-three [Thousand] Dollars and 00/100 ($ 4,543,000.00). The cost of the Target Property to ST. JOSEPH'S shall not exceed the exchange value less the sum of Three Hundred Fifty Thousand Dollars and 00/100 ($ 350,000.00). D. Any difference between the exchange value less the Three Hundred Fifty Thousand Dollars and 00/100 ($ 350,000.00) and the cost of the Target Property shall be paid by ST. JOSEPH'S, in cash, at the close of escrow as provided herein. Section 1.02. In order to facilitate the transfer to ST. JOSEPH'S of the interest of FHA in the Real Property to be donated to ST. JOSEPH'S, FHA shall cause the escrowholder named herein to prepare a gift deed conveying an undivided .19735 interest in the Real Property to ST. JOSEPH'S on the close of escrow. The conveyance shall be free and clear of all liens and encumbrances except as hereinafter set forth, evidenced by a standard California Land Title Association title insurance policy issued by Ticor Title Insurance Company, in the *777 amount of One Million One Hundred Seventeen Thousand Dollars and 00/100 ($ 1,117,000.00), which is the value of the gift, showing title vested in ST. JOSEPH'S, subject to the following: * * * ARTICLE II
Escrow
Section 2.01. An escrow shall be opened to consummate the exchange of the properties pursuant to this contract * * * within ten (10) days from the date of this agreement. ST. JOSEPH'S and FHA shall deliver signed escrow instructions to the escrow holder within sixty (60) days of the date hereof. Section 2.02. Escrow shall close within ninety (90) days from the date hereof. * * * A description of the target property, which consisted of two parcels of real estate to be purchased by St. Joseph's, was attached to the Contract as Exhibits C-1 and C-2. Both parcels of property were, at the time of the 1985 transaction, owned by Development. The 1985 transaction constituted the primary business activity of FHA during 1985. Although not so indicated at the beginning of the Contract, Development, as well as FHA, was identified as a party at the end thereof, with Mr. Arnaiz, Clark Freigen, and Jerry Harr signing on behalf of both entities. An additional appraisal *778 was prepared by Duncan, Duncan & Associates on or before February 19, 1986, for "I.R.S. purposes" which also determined a $ 5,660,000 value as of July 18, 1985. This latter appraisal was furnished to Mr. Arnaiz and Messrs. Freigen and Harr. The 1985 transaction resulted in a capital gain of $ 774,942 and a charitable contribution deduction of $ 502,650 to petitioners. On April 15, 1986, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (sometimes referred to as an application for extension or Form 4868). The application was prepared by a certified public accountant (CPA) on the basis of tax information provided by Mr. Arnaiz which included Forms W-2, Forms 1099, Forms K-1 (not including FHA), and various deductible expenses arising from petitioners' business and personal interests in 1985. At that time, petitioners had not received a Form K-1 from FHA. Accordingly, the CPA prepared the application for extension and estimated petitioners' 1985 tax liability without accounting for any tax liability in respect of income which might be derived by petitioners from FHA. Petitioners received an automatic 4-month extension *779 pursuant to section 1.6081-4(a)(1), Income Tax Regs.
Prior to filing the Form 4868, Mr. Arnaiz had attempted, on two separate occasions, to obtain from FHA a Form K-1 for the partnership's 1985 taxable year. Initially, he contacted the other partner of FHA, F & H Construction Company (F & H), to secure a 1985 Form K-1. When it was not forthcoming, Mr. Arnaiz contacted F & H's accounting firm, which was preparing FHA's 1985 partnership return, in an effort to obtain the Form K-1. He was informed by the accountant preparing FHA's partnership's return that, due to the complicated nature of the return, FHA would seek an extension of time in which to file and that a Form K-1 in respect of the partnership's 1985 activities would be delayed until such time as the return could be completed. Mr. Arnaiz made no further attempts to obtain information in respect of FHA's 1985 activities, nor did he provide the CPA with a copy of the Contract between FHA and St. Joseph's, or any other information relating to his involvement in FHA during 1985, which was in his files at the time the application for extension was prepared. The CPA was, however, generally aware that there was "a sale involving *780 an exchange and also a rather large donation" in 1985 and was also aware of existing appraisals of the FHA property. On or about August 15, 1986, petitioners filed a Form 2688, Application for Extension of Time To File U.S. Individual Income Tax Return, to further extend the time to file their 1985 Federal income tax return until October 15, 1986. The Form 2688 requested the additional extension due to the fact that "All information necessary to file a complete and accurate return by the extended due date has not yet been made available to the preparer." The application for extension was approved. Petitioners filed a joint Federal income tax return for the 1985 taxable year on or about October 15, 1986, which reflected a tax liability of $ 142,408 and tax due and owing of $ 103,040 stemming from the 1985 transaction. OPINION The sole issue for decision is whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure timely to file their 1985 Federal income tax return. Resolution of this issue turns on whether petitioners "properly estimated" their 1985 tax liability on Form 4868. Sec. 1.6081-4(a)(4), Income Tax Regs. If they did not do so, the *781 extensions of time to file were invalid and, absent any other reasonable cause, they are liable for the addition to tax under section 6651(a)(1). Crocker v. Commissioner, 92 T.C. 899, 912-914 (1989); see also Berlin v. Commissioner, 59 F.2d 996, 997 (2d Cir. 1932), affg. a Memorandum Opinion of this Court dated May 22, 1931. The focus of this case is a narrow one. Did the unsuccessful efforts to obtain a Form K-1 from FHA meet the Crocker standard? We think not. The mere fact that petitioners in fact underestimated their 1985 tax finally shown to be due does not mean that they did not properly estimate their tax; the standard is whether they made a "bona fide and reasonable attempt" to secure information from FHA necessary to make a "bona fide and reasonable estimate" of their tax liabilities. Crocker v. Commissioner, supra at 907-908. But, given Mr. Arnaiz's involvement in the 1985 transaction, as well as the CPA's knowledge of its existence, we think it was incumbent on petitioners to go further than they did. Well before April 15, 1986, Mr. Arnaiz was aware of the $ 5,660,000 *782 value for the FHA property established by the Contract and the two appraisals. [2] Thus, the value of what FHA was to receive was established and the only missing link was the cost basis of the FHA property. In this connection, we note that the Contract contemplated a "tax deferred exchange" as well as a charitable donation but that apparently the Contract was closed on the basis of a taxable exchange, the details of which are not revealed in the record. Neither does the record reveal that Mr. Arniaz was unaware of the manner in which the Contract was closed. We think that Mr. Arnaiz's sizeable interest in Development and, through it, in FHA, provided him with the means to obtain the amount of the cost basis of the FHA property. Had he done so, he and the CPA would have had the necessary information to submit a more accurate Form 4868 and therefore a "properly estimated" tax in accordance *783 with the requirement of the regulations. Cf. Crocker v. Commissioner, supra at 909-910. Under the circumstances herein, we cannot conclude that petitioners were justifiably unable to estimate their capital gain in the 1985 transaction at the time they filed the Form 4868. Cf. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). [3] Petitioners' reliance on Hudspeth v. Commissioner, T.C. Memo. 1985-628, revd. on another issue 914 F.2d 1207 (9th Cir. 1990), is misplaced. That case did no more than conclude that on the facts therein (the details of which are not revealed in the opinion) the taxpayers filed a proper estimate. It stands for nothing more than that under appropriate circumstances the failure to obtain a Form K-1 may justify the conclusion that the "properly estimated" tax requirement has been satisfied. *784 Nor are we impressed with petitioners' conclusion that Mr. Arnaiz thought that the 1985 transaction would be a wash, i.e., the charitable contribution deduction would offset the capital gain. In the first place, such a contention reflects an inconsistency. In order to have a bona fide belief that there was a wash, Mr. Arnaiz would have had to have had some knowledge of the amount of the capital gain. But this knowledge in turn depended upon the cost basis of the FHA property, which petitioners contend Mr. Arnaiz did not have and should not have been required to obtain. In the second place, just as mistakes as to the amount of income or deductions or mistakes of law do not generally constitute reasonable cause for failure to file a return, so too such mistakes do not constitute reasonable cause for failure to make a proper estimate. Cf. Henningsen v. Commissioner, 243 F.2d 954, 959 (4th Cir. 1957), affg. 26 T.C. 528 (1956); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Shomaker v. Commissioner, 38 T.C. 192, 202 (1962). [4]
*785 Petitioners having failed to carry their burden of proof that the standard established by Crocker v. Commissioner, supra, has been satisfied, we hold that the extensions of time to file their 1985 return were invalid. Consequently, in the absence of any other basis of establishing reasonable cause for failure timely to file that return, they are liable for the addition to tax under section 6651(a)(1). Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There is some vague testimony suggesting a post-April 15, 1986, "final" appraisal, but no such appraisal is in the record.↩
3. Cf. Calhoun v. Commissioner, T.C. Memo. 1992-189↩.
4. See also Purwin v. Commissioner, T.C. Memo. 1991-322; Springer v. Commissioner, T.C. Memo. 1977-191↩