Kimberly Kay JONES *v.* Brian Keith JONES

CA 93-124                                    858 S.W.2d 130

Court of Appeals of Arkansas
Division II
Opinion delivered July 7, 1993

8

*Austin & Osborne*, by: *Brenda Horn Austin*, for appellant.

*John F. Buergler*, for appellee.

JOHN MAUZY PITTMAN, Judge. Kimberly Kay Jones appeals from a decree of the Crawford County Chancery Court ordering appellee, Brian Keith Jones, to pay $112.00 per week in child support for the parties' two minor children. Appellant also appeals from that part of the divorce decree awarding appellee the right to claim the children as dependents for income tax purposes. After a hearing in April 1992 regarding temporary support and related issues, the chancellor ordered appellee to pay $78.00 per week in child support based upon appellee's testimony at trial that his approximate net weekly income was $296.68 per week. The chancellor ordered appellee to keep health insurance in effect for the benefit of the children; to be solely responsible for all extraordinary medical and dental expenses of the children; to make all of the mortgage payments on the marital home, the exclusive use of which was awarded to appellant; and to pay the debt on appellant's 1989 Chevrolet Corsica automobile. The chancellor also held that the parties were to equally divide any tax refunds received for 1991.

At the temporary hearing, counsel for appellee stated that, in the past, appellee had received bonuses and overtime pay but, at that time, appellee's current weekly net take home pay was $296.00. Appellant disputed this figure. The court found that, for the purposes of that hearing, appellee was taking home $296.00 per week and, according to the child support chart, was obligated to pay $78.00 per week for the two children.

At the hearing held on August 4, 1992, appellee produced a pay stub for the work week ending July 25, 1992, which showed that appellee's net pay was $383.45. This pay stub indicated that appellee had worked seven hours overtime; had earned $18,035.98 during the year to date; had paid $1,726.60 in federal income tax to date; had paid $1,385.38 in social security tax to date; and had paid $870.37 in state income tax to date. Appellant introduced the parties' 1991 federal income tax return, which showed their total income at $33,996.00 and indicated that a refund was owed to the parties in the amount of $986.00. Also

included in the record is a copy of the 1991 1099-G form submitted by the state, indicating a refund in the amount of $499.00.

Appellant also introduced the following worksheet:

Wage Information from 1991 Federal Tax Return:

$32,945.00
2,042.00 Social Security withheld
$30,903.00
1,646.00 State withholding
$29,257.00
3,692.00 Federal withholding
$25,565.00
270.00 Insurance deduction
$25,295.00

$25,295.00 divided by 52 weeks = $486.00 weekly income

$486.00 = $116.00 c/s per week

Wage Information from check stub from week ending 06/20/92:

$15,124.48 Year-to-Date income
1,458.29 Federal withholding
$13,666.19
1,157.02 FICA
12,509.17
729.26 State withholding
$11,779.91
135.00 Insurance deduction
$11,644.91

$11,644.91 divided by 25 weeks = $465.80 weekly income

$465.80 = $112.00 c/s per week

Appellant also introduced pay stubs from appellee's employer dated June 13, 19, and 20, 1992, indicating bonuses, regular work time, and overtime. Appellant testified that the $296.00 net take-home pay that appellee had claimed to make at the temporary hearing was not correct; she stated that his average weekly take-home pay, based on her own personal knowledge from his earnings in 1991, amounted to $486.00 per week. She testified that the mortgage payment was $554.00 per month; the

insurance on the house was $62.00 every three months; and the annual real property taxes amounts to $496.00.

Appellee testified that, although he had been working five and six days per week, his work schedule was not predictable and, on some days, he was sent home early and ended up working less than forty hours per week. He stated that, at the time of the hearing, he was working a short week and had been scheduled for four days each week since the fall of 1991. He stated that he had been making the house payment and appellant's car payment, and had been forced to borrow money from his parents in order to meet his child support obligations. He testified that his net pay the week before the hearing was $383.00 and that his average net pay per week was $465.80.

In the final decree entered October 16, 1992, the chancellor awarded custody of the two children to appellant and gave reasonable visitation with the children to appellee. The chancellor ordered appellee to pay $112.00 per week (the chart amount for weekly take-home pay of $460.00) in child support through a wage assignment. The chancellor also held that appellee must provide health insurance for the children and that, as soon as it is available at her place of employment, appellant must also do so. The chancellor ordered the parties to share extraordinary health expenses for the children not covered by either party's health insurance. The chancellor also held that appellee shall be entitled to claim the two children as dependents for income tax purposes. In the decree, the chancellor ordered the parties to sell their marital home within ninety days and ordered each party to make one-half of the mortgage, taxes, and insurance payments on the house.

On appeal, appellant first argues that the chancellor erred in determining the amount of child support at both hearings.

■■ The controlling law on what is required to determine the amount of child support is set forth in Ark. Code Ann. § 9-12-312(a)(2) (Supp. 1991):

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a refutable presumption for the

award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the support chart, shall the presumption be rebutted.

"Reference to the chart is mandatory, and the chart itself establishes a rebuttable presumption of the appropriate amount which can only be explained away by written findings stating why the chart amount is unjust or inappropriate." *Black* v. *Black*, 306 Ark. 209, 214, 812 S.W.2d 480, 482 (1991). The chancellor, in his discretion, is not entirely precluded from adjusting the amount as deemed warranted under the facts of a particular case. *Waldon* v. *Waldon*, 34 Ark. App. 118, 806 S.W.2d 387 (1991). The presumption may be overcome if the chancellor determines, upon consideration of all the relevant factors, that the chart amount is unjust or inappropriate. *Id.* The relevant factors include food, shelter, utilities, clothing, medical and education expenses, accustomed standard of living, insurance, and transportation expenses. *Id.* The amount of child support lies within the sound discretion of the chancellor, and we will not disturb the chancellor's finding absent an abuse of discretion. *Grable* v. *Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991).

At the temporary hearing, appellee testified that his net take-home pay was approximately $296.00 per week. The chancellor agreed and awarded temporary child support according to the chart based on this amount. On appeal, appellant argues that this fact was shown to be untrue by the evidence produced four months later at the final hearing. Chancery cases are reviewed *de novo* on appeal, and the appellate court will not disturb the chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence, and because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court will defer to the chancellor's superior opportunity to assess credibility. *Appollos* v. *Int'l Paper Co.*, 34 Ark. App. 205, 808 S.W.2d 786 (1991); Ark. R. Civ. P. 52(a).

We note that the evidence produced at the final hearing

in August related to the parties' 1991 income and also showed appellee's weekly and year-to-date earnings through the summer of 1992. This evidence showed a greater average amount of take-home pay than the amount to which appellant testified in April 1992 at the first hearing. Nevertheless, the temporary hearing occurred four months before the final hearing, where evidence showed appellee to have a higher take-home pay. There was evidence to support the chancellor's finding in the temporary order, and we cannot say that this finding is clearly against the preponderance of the evidence.

We also note that, in the temporary order, appellee was not only ordered to pay child support according to the family support chart, based upon his net income as found by the chancellor, but he was also ordered to make the entire mortgage, taxes, and insurance payments on the marital home where appellant and the children continued to live. Additionally, he was ordered to provide health insurance and medical care for the children and to make appellant's car payment. Even if appellant had shown that the finding as to appellee's net take-home pay in April 1992 was clearly against the preponderance of the evidence, we would not reverse on this issue in light of the substantial additional payments that appellant made on behalf of the children during that time period. Error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice, we do not reverse. *Hibbs* v. *City of Jacksonville*, 24 Ark. App. 111, 749 S.W.2d 350 (1988).

Appellant also argues in her first point on appeal that the chancellor did not properly determine appellee's weekly take-home pay, because he did not include in appellee's income the 1991 tax refund received by appellee in 1992 and the monetary value of the two dependent exemptions. First, we note that, at most, appellee was entitled to only one-half of the income tax refund for the year 1991. Additionally, appellant produced no evidence that appellee would be entitled to a refund for the tax year 1992, when the decree establishing child support was entered, or that appellee's receipt of a tax refund would be a recurring event. The burden is upon the appellant to bring up a record sufficient to demonstrate that the trial court was in error, *Smith* v. *Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990), and, where the appellant fails to meet this burden, the appellate court

has no choice but to affirm the trial court. *McLeroy v. Waller*, 21 Ark. App. 292, 731 S.W.2d 789 (1987). Appellant has cited, and we have found, no Arkansas case holding that prior tax refunds paid months before a divorce hearing must be included in income for purposes of calculating child support to be paid in the future. We therefore find no error in the chancellor's refusal to include appellee's receipt of one-half of the 1991 income tax refund in appellee's income.

Appellant also argues that, because appellee would receive a benefit from claiming the children as dependents for income tax purposes, this benefit should be added to his net income for purposes of determining child support. Appellee responds to this argument by stating that, if he cannot claim the children as dependents, his weekly tax withholding will go up and his net take-home pay will go down, thereby warranting a reduction in his child support obligation according to the family support chart. We note that appellant introduced no evidence to show the actual monetary value of these exemptions to appellee and, therefore, failed to bring up a record sufficient to demonstrate error in this regard. *See Smith* v. *Smith, supra.* Accordingly, we affirm the chancellor on this issue.

In her second point on appeal, appellant argues that the chancellor erred in awarding appellee the right to claim the children as dependents because this matter was not raised by either party in the pleadings or testimony. We disagree. In *Freeman v. Freeman*, 29 Ark. App. 137, 778 S.W.2d 222 (1989), we held that the right to claim the parties' children as tax exemptions is accurately characterized as a matter of child support. In his complaint, appellee requested that he be ordered to pay child support according to the family support chart if appellant was awarded custody of the children; in her counterclaim for divorce, appellant also requested that appellee be ordered to pay child support according to the family support chart. Clearly, the issue of the right to claim the children as dependents for tax purposes was within the issues at trial and could be addressed by the chancellor in the final decree.

In her third point on appeal, appellant argues that the chancellor erred in awarding appellee the right to claim the children as dependents for income tax purposes because he lacked

authority to award the federal income tax dependency exemptions to appellee, the non-custodial parent, under 26 U.S.C.A. § 152(e) (Supp. 1993), which provides in subsections (1) and (2) as follows:

(e) Support test in case of child of divorced parents, etc.-

(1) Custodial parent gets exemption.-Except as otherwise provided in this subsection, if-

(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents-

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

(2) Exception where custodial parent releases claim to exemption for the year.-A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if-

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.

Appellant argues that, under this code section and the Supremacy Clause of the United States Constitution, state courts are without authority to grant the non-custodial parent the right to claim the children as tax exemptions. Appellant argues that, in granting appellee these exemptions, the chancellor exerted the power of taxation, which has been preempted by the federal government and is not subject to state control.[1]

Appellant cites *Blanchard* v. *Blanchard*, 261 Ga. 11, 12-13, 401 S.E.2d 714, 717 (1991), in support of her argument that the state courts lack authority to award non-custodial parents the right to claim the children as tax exemptions. There, the Georgia Supreme Court held that, since state courts cannot exert the power of taxation, they cannot award the right to claim the exemption to the non-custodial parent. The majority of state courts which have decided this issue, however, have held that state courts may still make this determination. *See Monterey County* v. *Cornejo*, 53 Cal.3d 1271, 812 P.2d 586, 592, 283 Cal. Rptr. 405 (1991). In *Serrano* v. *Serrano*, 213 Conn. 1, 6, 566 A.2d 413, 415-16 (1989), the Connecticut Supreme Court explained:

Our analysis of whether state law frustrates the purpose of § 152(e) must start from certain well established principles of federal law. The United States Supreme Court has repeatedly held that, because the field of

---

[1] Appellant has not argued that, in granting appellee these exemptions, the chancellor violated the terms of the Arkansas Supreme Court's per curiam order, *In re: Guidelines for Child Support Enforcement*, 305 Ark. 613, 804 S.W.2d XXIV (1991). In that per curiam, the supreme court stated: "Allocation of dependents for tax purposes belongs to the custodial parent unless the parties otherwise agree. See Sec. 152(e) of the Internal Revenue Code." 305 Ark. at 617-18, 804 S.W.2d at XXVIII. Because, in regard to this point on appeal, appellant has made no argument concerning state child support guidelines, we need not decide the effect of this per curiam on this appeal.

domestic relations has traditionally been regulated by the states, the standard for demonstrating a preempting conflict between federal law and a state domestic relations provision is high: "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted. *Wetmore* v. *Markoe*, 196 U.S. 68, 77, [25 S.Ct. 172, 175, 49 L.Ed. 390] (1904). A mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden.

There, the court noted that the 1984 amendments to the Internal Revenue Code set forth in 26 U.S.C.A. § 152(e) were adopted by Congress to ease the Internal Revenue Service's administrative burden:

[S]tate courts have been allocating the exemption for decades. Moreover, as the defendant concedes, state courts developed the practice long before the Internal Revenue Code made explicit reference to it by adopting the first version of § 152(e) in 1967. In light of the great deference accorded to state courts in the area of domestic relations, we are persuaded, as the courts in a significant number of jurisdictions have held . . . that Congress would have explicitly prohibited states from allocating the exemption if it had intended to do so.

. . . [T]he purpose of the 1984 amendments was to extricate the Internal Revenue Service from the burdensome administrative function of determining the value of the child support contributions of the parties. The amendments accomplished this purpose by eliminating the exceptions that required a determination of how much the parties contributed. Thus, under the current version of § 152(e), the Internal Revenue Service no longer need determine whether a noncustodial parent to whom a state court has allocated the exemption has made child support contributions worth at least $600. In addition, the amend-

ments eased the administrative burden on the Internal Revenue Service by requiring that a noncustodial parent claiming the exemption attach a declaration from the custodial parent promising not to claim the exemption, thereby ensuring that both parents could not simultaneously claim the exemption.

The trial court's order in no way frustrates the congressional objective of eliminating the involvement of the Internal Revenue Service in disputes concerning the allocation of the dependent child exemption. Under the order, the allocation is made without any involvement by the Internal Revenue Service. The trial court's allocation imposes no cost on the federal government but rather facilitates the goal of administrative certainty by requiring that the defendant execute a declaration indicating that she will not claim the exemption. Since we find no conflict between § 152(e) and the trial court's order, we conclude that § 152(e) is not preemptive of the practice of allocating the dependent child exemption.

213 Conn. at 9-11, 566 A.2d at 417-18 (citations omitted).

■ We hold that the Supremacy Clause does not prohibit state courts from providing for the allocation of dependency tax exemptions so long as they do so through the exercise of their contempt powers. In making these determinations, chancellors may, without offending federal law, direct the custodial parent to sign a written declaration that he or she will not claim their children as dependents for tax purposes. *See* 26 U.S.C.A. § 152(e)(2). Although such orders by the chancellor cannot change the allocation of dependency exemptions as far as the Internal Revenue Service is concerned, compliance with such orders by custodial parents may be enforced through the chancery courts' contempt powers.

■ Although we have the power to decide chancery cases *de novo* on the record before us, we may, in appropriate cases, remand such cases for further action. *Black v. Black*, 306 Ark. at 215, 812 S.W.2d at 483. We think that this case should be remanded for the chancellor to reconsider the dependency tax exemption issue. If, on remand, he deems it appropriate, the chancellor may, in keeping with the Internal Revenue Code,

direct appellant to sign the necessary written release. If the chancellor decides on remand, however, not to require appellant to release the exemptions, he must consider the fact that the loss of the dependency exemptions would, most likely, cause appellee to be liable for more income taxes and would necessitate increased withholding of federal and state taxes from his pay checks. Since that would reduce his take-home pay, an appropriate adjustment of his child support obligation would be in order. Therefore, the chancellor may take evidence regarding the reduction in appellee's take-home pay if the chancellor decides not to order appellant to release the dependency exemptions to appellee.

Affirmed in part; remanded in part.

MAYFIELD and ROBBINS, JJ., agree.