Tom ANDERSON *v.* Paula ANDERSON

CA 97-498 963 S.W.2d 604

Court of Appeals of Arkansas
Division II
Opinion delivered February 11, 1998

*Pryor, Barry, Smith, Karber & Alford, PLC*, by: *Gregory T. Karber*, for appellant.

*Eddie N. Christian, Jr.*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Tom Anderson appeals the Sebastian County Chancery Court's order directing that he pay alimony and child support to his ex-wife, appellee

Paula Anderson. Appellant Anderson also appeals those parts of the chancery court's order directing him to pay certain marital debts and to pay appellee Anderson's counsel a fee of $4,000. We conclude that the chancery court did not err in ordering appellant Anderson to pay alimony and in determining the amount of child support that it ordered appellant to pay to appellee Paula Anderson. We further conclude that the chancery court did not err in ordering appellant Anderson to pay certain marital debts and to pay Paula Anderson's attorney's fees. Because the chancery court did not err, we affirm.

The chancery court entered the order at issue on January 14, 1997, as a supplement to a divorce decree that it had previously entered on April 17, 1996. In the 1996 decree the chancery court awarded appellant Anderson a divorce from Paula Anderson and awarded custody of the Andersons' two minor daughters to her. In this decree the chancery court noted "that issues concerning the property settlement, permanent child support and alimony will be deferred until further order." Until such time as this further order was entered, the chancery court ordered appellant Anderson to pay $1,267 in alimony and child support every month and to make the monthly mortgage payments on the family home. The chancery court entered this order after having heard testimony from appellant Anderson and his father, Frank Anderson, at a hearing held on April 11, 1996. In order to decide the issues preserved in the 1996 divorce decree, the chancery court held an additional hearing on November 18, 1996. Appellant Anderson and his father also testified at this hearing. In addition, William Beall, the accountant for the Anderson family business, testified on behalf of appellant Anderson. Paula Anderson testified as well. After hearing the testimony of these witnesses and after considering arguments made by counsel in post-hearing briefs, the chancery court entered the order, noted above, from which appellant Anderson appeals.

Appellant Anderson makes five allegations of error. He asserts that, in determining his income for the purpose of calculating the alimony and child support he should pay each month, the chancery court erred by refusing to deduct the income taxes that he paid on a portion of his 24% share of earnings that was retained

by the family business, a closely held corporation, Anderson–Martin Machine Company (hereinafter AMCO). This error resulted in the chancery court ordering him to pay child support of $2,133 per month. He also contends that, under the circumstances of this case, the court abused its discretion in ordering him to pay alimony of $500 per month for a period of time that extended to five years after the parties' youngest child attains the age of eighteen or graduates from high school. Anderson also asserts that the chancery court erred in ordering him to pay up to $5,000 of credit card debts that the parties incurred during their marriage. He further asserts that the chancery court erred in refusing to order appellee Paula Anderson to pay part of a $150,000 debt that he owes in connection with a failed business venture. Finally, appellant Anderson asserts that the chancery court erred in directing him to pay a fee of $4,000 to Paula Anderson's counsel. For the reasons we will set forth, we conclude that none of these allegations of error has merit.

Appellant Anderson's first allegation of error presents a question of first impression concerning the interpretation of the Arkansas Family Support Chart set forth in *In re: Guidelines for Child Support*, 314 Ark. 644, 863 S.W.2d 291 (1993).[1] This issue is of substantial public interest to individuals, such as appellant Anderson, who have child-support obligations and who also receive income based on their pro rata ownership of a closely held business corporation that pays no federal income tax pursuant to subchapter S of the Internal Revenue Code, 26 U.S.C.S. §§ 1361-79 (1996), and no state income tax pursuant to Ark. Code Ann. § 26-51-409 (Supp. 1995/Repl. 1997), pursuant to which subchapter S of the Internal Revenue Code is adopted to determine the state income tax owed by certain closely held business corporations. According to appellant Anderson, the chancery court erred in concluding that it should not deduct from the income that Anderson had available to pay child support in 1995 the income taxes that he paid for that year on his pro rata share of

---

[1] The family support chart involved in this case was issued in 1993. The Arkansas Family Support Chart has recently been revised by the Arkansas Supreme Court. The newly revised family-support chart was handed down by the Court on September 25, 1997, and is published in the appendix to 329 Arkansas Reports at page 668.

the profits earned by his family business, AMCO, which is a subchapter S corporation. Pursuant to the family-support chart, a child-support payor may deduct from his income available to pay child support the amount of federal and state income taxes that he paid for that year. *Guidelines*, 314 Ark. at 646. Appellant Anderson asserts that this provision of the family-support chart permits him to deduct from the income he had available in 1995 to pay child support the income taxes that he paid for that year on his pro rata share of AMCO's earnings that the corporation retained and did not distribute to him, as a shareholder.

This issue arose because appellant Anderson owns 24% of AMCO, and its income taxes are accounted for pursuant to subchapter S of the Internal Revenue Code. A subchapter S corporation is defined as follows:

> A small business corporation with a statutorily limited number of shareholders, which, under certain conditions, has elected to have its taxable income taxed to its shareholders at regular income tax rates. . . . Its major significance is the fact that S corporation status usually avoids the corporate income tax, and corporate losses can be claimed by the shareholders.

*Black's Law Dictionary* 342 (6th ed. 1990). Pursuant to subchapter S, a small business corporation can have its profit taxed in the same way that the profit of a partnership is taxed:

> Corporations which elect to be treated as small business corporations under the provisions of Subchapter S receive tax treatment that is similar to that of partnerships. Shareholders of a Subchapter S corporation are required to include their respective pro rata shares of the undistributed taxable income of the corporation as part of their gross income on their individual tax returns. . . . In addition, shareholders in a Subchapter S corporation can deduct their pro rata share of any net operating loss of the corporation on their individual tax returns.

*Hudspeth v. C.I.R.*, 914 F.2d 1207, 1211 (9th Cir. 1990).

Before the chancery court, appellant Anderson argued that his shareholder income for 1995 that was retained by AMCO should not be counted as income available to pay child support. For simplicity, appellant has used hypothetical figures in his argu-

ment. We will do likewise. If the net earnings of AMCO in 1995 equal $1,000,000, then appellant's 24% distributable share that is reported to the IRS on Schedule K-1 is $240,000. Appellant must pay $90,000 of state and federal income taxes on this sum, even if AMCO holds back $80,000 and only distributes $160,000 of its income to appellant. While this retention of part of appellant's share of profits may impact appellant's ability to pay his taxes, it does not reduce his tax liability. The chancery court agreed with appellant's contention and excluded from its computation of his income for child-support purposes the portion of his shareholder income that was retained by AMCO in 1995, which was $80,000 in the above hypothetical.[2]

Appellant Anderson also asserted that, in its computation of his income for child-support purposes in this hypothetical, the court should deduct the total income taxes of $90,000 that he paid on his $240,000 share of AMCO's distributed earnings. The chancery court rejected this argument. It deducted from appellant's income only $60,000, which is the proportion of his income taxes that is attributable to the $160,000 of AMCO earnings actually distributed to him. The $30,000 of income taxes attributed to the $80,000 of appellant's earnings retained by AMCO was not deducted. In its January 14, 1997, order, the chancery court explained its decision as follows:

> The court has determined that child support should be based on plaintiff's net income for 1995 exclusive of his company's retained earnings and after giving him credit for income taxes paid on his distributed income, but not for income taxes paid on retained earnings.
>
> . . . .
>
> In reaching its decision on the amount of child support to award the defendant the court has carefully considered the arguments of counsel for both parties. It is convinced that plaintiff's share of retained earnings he receives each year from his company, of which he is a 24% shareholder, is income for child support calculation purposes, according to the definition of income in the

---

[2] Appellee has not appealed the chancellor's decision to exclude Anderson's share of AMCO's retained/undistributed earnings from Anderson's income in computing his support liability. Consequently, we do not express any opinion on its propriety.

Supreme Court's per curiam opinion and under A.C.A. Section 9-14-107(b). It is further convinced, however, that plaintiff has rebutted the presumption that the amount reflected by the child support chart after including income from retained earnings is the just amount of child support to order in this particular case, and that accordingly plaintiff's share of his company's undistributed share of retained earnings should not be used in calculating income or child support in this particular case. It is further convinced, however, that if the court is not going to include plaintiff's undistributed share of retained earnings in calculating his child support it would be inequitable to give plaintiff credit for income taxes paid on those retained earnings even though the taxes are deducted from plaintiff's paycheck. Notwithstanding the fact that plaintiff may not immediately receive his share of retained earnings, he, nevertheless does benefit from them (his stockholder's equity is increased) and it would be inequitable for him to receive this substantial benefit in which the defendant does not share and then deprive the defendant further by allowing plaintiff to reduce that portion of his income for child support calculation purposes by deducting the taxes on the retained earnings.

■ As noted above, this issue requires interpretation of the family-support chart. The family-support chart is, in essence, a rule promulgated by the Arkansas Supreme Court .[3] We construe court rules using the same means, including canons of construction, that are used to interpret statutes. *See Gannett River States Pub. Co. v. Arkansas Judicial Discipline and Disability Comm'n,* 304 Ark. 244, 247, 801 S.W.2d 292 (1990). The basic rule of statutory interpretation to which all other interpretative guides must yield is the necessity to give effect to the intent of the drafter of the statute. *See Rogers v. Tudor Ins. Co.,* 325 Ark. 226, 234, 925 S.W.2d 395 (1996). The cardinal principle for construing remedial legislation is for courts to give appropriate regard to the spirit which promoted the enactment of the remedial legislation, the

[3] Because this case involves an issue of first impression, is of substantial public interest, and requires interpretation of a rule of the supreme court, we certified this case to the Arkansas Supreme Court pursuant to Ark. Sup. Ct. R. 1-2(a)(17)(i); (iv); (v) (1996). However, the supreme court declined to accept the case and remanded it back to this court for decision. Jurisdiction to determine the issues presented in this appeal is therefore in the court of appeals.

mischief sought to be abolished, and the remedy proposed. *Arkansas Dep't of Human Servs. v. Walters*, 315 Ark. 204, 209, 866 S.W.2d 823 (1993). The purpose of a statute must be considered when construing it. *Stover v. Stover*, 287 Ark. 116, 119, 696 S.W.2d 750 (1985). Moreover, in interpreting statutes, a court should take a common-sense approach. *Bryant v. Mars*, 309 Ark. 480, 485, 830 S.W.2d 869 (1992).

■ When we apply these principles of statutory interpretation to the chancery court's interpretation of the pertinent provisions of the family-support chart, we conclude that the court did not err in rejecting appellant Anderson's contention that, pursuant to the chart, he was entitled to have deducted from his income available to pay child support the income taxes that he paid on his 1995 shareholder earnings that were retained by AMCO. We agree with the chancery court's interpretation of the pertinent provisions of the family-support chart and reject Anderson's interpretation because it is contrary to the purpose for which the family-support chart was promulgated. The family-support chart was established "to ensure the proper enforcement of child-support awards in this state." *Guidelines*, 314 Ark. at 650.

■ Appellant Anderson's interpretation of the provisions of the chart that permit deduction of income-tax payments from the income that a child-support payor has available to pay child support is contrary to the purpose of the family-support chart. His interpretation would encourage child-support payors, who are also shareholders in subchapter S corporations, to favor their own long-term financial interests in their corporations over their children's need for support until such time as the children are no longer minors. A subchapter S corporation shareholder, such as appellant, would have an incentive to keep most or all of his shareholder income as retained earnings by the corporation. The greater the percentage of his income that the shareholder has retained by the corporation, rather than distributed to him, the lesser will be his income available to pay child support. This is so because not only would the child-support payor/subchapter S corporation shareholder, pursuant to the chancery court's decision in this case, be able to deduct from his child-support income the amount of his shareholder earnings retained by the corporation,

but he would also be able to reduce his child-support income by the entire amount of income taxes that he pays on his corporate earnings, whether distributed to him or retained by the corporation. It is wholly inconsistent with the purpose of the family-support chart to interpret it in such a way as to encourage child-support payors to minimize their child-support income. Appellant Anderson's interpretation does so and the chancery court did not err in rejecting it.

Appellant Anderson also asserts that the chancery court erred in declining to order appellee Paula Anderson to pay some of the $150,000 debt that he owes to a bank in connection with a failed business venture. In 1992 appellant Anderson and a partner started a company, Technology Direct, to build and sell inexpensive computers. The business failed in October of 1995, and appellant Anderson and his partner were jointly liable for a $150,000 debt to a bank that had provided financing for Technology Direct. In April of 1996, when the first hearing was held in this case, appellant Anderson was personally liable for one-half of this debt and was responsible for the entire debt if his partner failed to pay his half. At this hearing, appellant Anderson volunteered to "just keep paying" his debt to the bank. When asked on direct examination if he intended to ask Paula Anderson to pay part of this debt, appellant Anderson replied, "I don't foresee her being able to pay it and we'll just do the best we can on that one." At the second hearing that was held in this case, in November 1996, appellant Anderson testified that his partner in Technology Direct had failed to pay his half of the debt to the bank and, therefore, he was liable to the bank for approximately $150,000. On cross-examination, appellant Anderson was asked if anything had changed with regard to Paula's financial situation such that she could pay some of the Technology Direct debt. He replied, "She hasn't received any kind of high paying job at this point." Given appellant Anderson's testimony at the two hearings that he did not foresee that Paula would have the financial ability to pay any of the Technology Direct debt, he will not be heard on appeal to complain that the chancery court erred by agreeing with his conclusion that Paula lacked the financial resources to pay part of the Technology Direct debt. An appellant may not complain on

appeal that the chancellor erred if the appellant has induced, consented to, or acquiesced in the chancellor's decision. *Dodson v. Dodson*, 37 Ark. App. 86, 89, 825 S.W.2d 608 (1992).

Appellant Anderson also asserts that the chancery court erred in ordering him to pay child support of $2,133 per month. Moreover, he contends that the chancery court erred in ordering him to pay Paula alimony of $500 per month until five years after the graduation of their youngest child or until she remarries. The chancery court made the $2,133 per month child-support award after determining that appellant Anderson's net income for child-support purposes in 1995 was $116,357 ($9,696 per month) and by then applying to this figure the appropriate directive set forth in the Arkansas Family Support Chart. The support chart that was then in effect stated, in essence, that when the payor's income exceeds $5,000 per month the appropriate level of child support for two dependents is 22% of the payor's monthly income. *In re: Guidelines for Child Support*, 314 Ark. 644, 646, 863 S.W.2d 291 (1993). With regard to its award to Paula of $500 alimony per month, in its order the chancery court noted:

> In addressing the subject of alimony, the court is convinced the plaintiff has the ability to pay alimony and that the defendant is in need of it. The court further believes that the defendant's desire to obtain employment which will allow her to be at home with the children when they are out of school is not unreasonable considering that defendant has always been at home with the children during this marriage of substantial duration. Obtaining employment which will coincide with the children's school schedule will, of course, limit the job opportunities available to defendant and the amount of compensation. Considering the length of the marriage, the wife's prospects for employment, and the husband's ability to pay, the court finds plaintiff should pay alimony until five years after the youngest child is presently scheduled to graduate from high school or until defendant remarries or cohabits with a man to whom she is not related.

Moreover, in its order the chancery court noted that the total of appellant Anderson's monthly child-support payment ($2,133) and of his monthly alimony payment ($500) was $2,633 per month. The chancery court noted further that, after subtracting

these amounts from appellant Anderson's 1995 income of $9,696 per month and after further subtraction of monthly payments on the Technology Direct debt and payments for additional income taxes on his undistributed earnings portion of his 1995 income, appellant Anderson will still have $2,364 per month to support himself and will still have 24% ownership of AMCO. The chancery court noted further that the $2,364 per month that appellant Anderson will have to live on "is only $269 less than the amount provided by the court for defendant [Paula] and [the] two children."

 Certain case-law principles govern our review of a chancery court's award of spousal and child support. The amount of child support a chancery court awards lies within the court's sound discretion, and we will not disturb the chancellor's child-support award absent an abuse of discretion. *Mearns v. Mearns*, 58 Ark. App. 42, 48, 946 S.W.2d 188 (1997); *Jones v. Jones*, 43 Ark. App. 7, 12, 858 S.W.2d 130 (1993). Reference to the family-support chart is mandatory, and the chart itself establishes a rebut-table presumption of the appropriate amount of child support that can only be disregarded if the chancery court makes express findings of fact stating why the amount of child support set forth in the support chart is unjust or inappropriate. *See Black v. Black*, 306 Ark. 209, 214, 812 S.W.2d 480 (1991); *McJunkins v. Lemons*, 52 Ark. App. 1, 5, 913 S.W.2d 306 (1996). With regard to a chancery court's decision to award spousal support (alimony), the chancery court's decision to do so is a matter that also lies within the court's sound discretion. *Wilson v. Wilson*, 294 Ark. 194, 199, 741 S.W.2d 640 (1987). A chancery court's decision to award alimony will not be reversed on appeal absent an abuse of discretion. *Id.*; *Tortorich v. Tortorich*, 50 Ark. App. 114, 121, 902 S.W.2d 247 (1995). The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 105, 747 S.W.2d 89 (1988). The primary factors that a chancery court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.*; *Mearns v. Mearns*, 58 Ark. App. at 49. To balance these primary factors, a chancery court

should consider certain secondary factors. *See Mearns v. Mearns,* 58 Ark. App. at 49-50. Among these secondary factors are: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. *Id.*

Testimony pertaining to the nature and amount of appellant Anderson's income, pertaining to the extent and nature of his resources and assets and pertaining to his earning ability and capacity have been noted, above, in connection with his contention that the chancery court erred in not reducing his income available to pay child support by the amount of income taxes he paid in 1995 on his pro rata share of earnings retained by AMCO. At the hearing that was held on November 18, 1996, Paula testified concerning the nature and amount of her income, both current and anticipated, testified about the nature and extent of her financial resources and assets, and also testified about her earning ability and capacity. She testified that she had married appellant Anderson in 1973. She noted that prior to her marriage she had worked as an administrative secretary for a county health department and that she had graduated from high school and had attended the University of Arkansas for one year. She testified further that she and appellant had had three daughters and that the two youngest were twelve and fourteen years of age. She stated that she and appellant Anderson had agreed in 1977 that she would not work after their first child was born but that she would stay home and raise the children. She acknowledged that since September 1995 she had worked as a substitute secretary and a substitute media specialist for the Fort Smith Public Schools and that she intended to apply for a permanent job as a secretary with the school system. She noted that, if she were hired, she would earn $10,000 to $18,000 for a nine-month contract. She explained that she was applying for a permanent job only with the school system so that she could be at home with her daughters during the summer months when school was not in session. With regard to the extent and nature of her financial resources and assets, Paula said: "I'm forty-three (43) years old. I have very little

education. I do not have anything. I don't have any CDs. I don't have any stocks. I don't have any retirement. . . . It's going to take a long time for me to get back on my feet . . . . And I also don't own 24 percent in stock in a company like Mr. Anderson does. I don't have anything to fall back on."

 Given the testimony, noted above, that was before the chancery court, we cannot say that the court abused its discretion in ordering appellant Anderson to pay $2,133 per month in child support for two children and to pay $500 per month in spousal support. The chancery court's child-support award was nothing more than a straightforward application of the family-support chart to the $9,696 monthly income that appellant Anderson had available to pay child support. The chancery court's spousal-support award was based on testimony from which the court could conclude that Paula needed $500 per month in support and that appellant Anderson had the financial ability to provide this support.

 Appellant Anderson also asserts that the chancery court erred in ordering him to pay up to $5,000 of credit card debts that he and Paula had incurred. In its order, the chancery court ordered appellant Anderson to pay this debt because Paula "has no ability to pay . . . the credit cards debts." A chancery court has authority to consider the allocation of debt in a divorce case. *See Box v. Box*, 312 Ark. 550, 557, 851 S.W.2d 437 (1993). A chancery court's decision to allocate debt to a particular party in a divorce case is a question of fact and will not be reversed on appeal unless clearly erroneous. *See Grace v. Grace*, 326 Ark. 312, 317, 930 S.W.2d 362 (1996). A chancery court's determination that debt should be allocated between the parties in a divorce case on the basis of their relative ability to pay is not a decision that is clearly erroneous. *See Richardson v. Richardson*, 280 Ark. 498, 503, 659 S.W.2d 510 (1983). As noted above, there was ample testimony before the chancellor from which he could conclude that appellant Anderson's financial position was decidedly superior to Paula's. Therefore, the court's allocation of the parties' credit-card debt was not clearly erroneous.

Finally, appellant Anderson asserts that the chancellor erred in ordering him to pay Paula's counsel a fee of $4,000. Pursuant to statute, such fee awards are permissible in divorce cases. Ark. Code Ann. § 9-12-309(a) (Repl. 1993). A chancellor has considerable discretion to award attorney's fees in a divorce case. *Gavin v. Gavin*, 319 Ark. 270, 272, 890 S.W.2d 592 (1995); *Stepp v. Gray*, 58 Ark. App. 229, 240-41, 947 S.W.2d 798 (1997). Moreover, the chancellor is in a better position to evaluate counsel's services than an appellate court, and, in the absence of clear abuse, the chancellor's award of an attorney's fee will not be disturbed on appeal. *Wilson v. Wilson*, 294 Ark. 194, 198, 741 S.W.2d 640 (1987). In determining whether to award attorney's fees, the chancellor must consider the relative financial abilities of the parties. *Paulson v. Paulson*, 8 Ark. App. 306, 310-11, 652 S.W.2d 46 (1983); *see also Lee v. Lee*, 12 Ark. App. 226, 674 S.W.2d 505 (1984). As we have previously noted, from the testimony given by appellant Anderson and his witnesses, the chancellor could have concluded that he was, relative to Paula, in a much better financial position. Review of the record shows that in the course of representing Paula her counsel conducted a deposition, responded to two sets of interrogatories, and carefully studied many complex financial and tax records of appellant Anderson and AMCO. Given the chancellor's superior position to evaluate the services Paula's counsel rendered, we cannot say that the chancery court clearly abused its discretion in ordering appellant Anderson to pay attorney's fees.

For the reasons set forth above, we affirm the Sebastian County Chancery Court's order of January 14, 1997.

Affirmed.

BIRD and GRIFFEN, JJ., agree.