Vick L. PANNELL *v.* Linda K. PANNELL

CA 98-421                                                  981 S.W.2d 531

Court of Appeals of Arkansas
Division III
Opinion delivered December 16, 1998

*Davidson Law Firm, Ltd.*, by: *Brandon L. Clark*, for appellant.

*Daggett, Van Dover, Donovan & Perry, PLLC*, by: *J. Shane Baker*, for appellee.

A NDREE LAYTON ROAF, Judge. Vick L. Pannell appeals an order from Garland County Chancery Court modifying the amount of child support that he was obligated to pay to his ex-wife, Linda K. Pannell, for his son Jody. On appeal, Vick argues that the chancellor erred in: 1) not dismissing the modification petition because Linda failed to submit an affidavit of financial means; 2) using a means of calculating his income that was not recognized or authorized by Arkansas law; and 3) ruling in favor of an increase in support based on the evidence adduced at the hearing. We affirm.

Jody, who was born on January 22, 1980, is the Pannells' only child. In a divorce decree entered on June 23, 1982, Linda was awarded custody of Jody, and Vick's support obligation was set at $70 per week. The decree was modified by an order dated October 20, 1982, which raised Vick's support obligation to $336.30 per month, beginning on October 1 of that year. Linda sought no further increases in support until 1997.

On February 10, 1997, Linda filed a petition for an increase in child support commensurate with Vick's current earnings from River City Sales and Marketing, a subchapter S corporation that he established in 1988, and in which he is the sole shareholder. In the hearing on the petition, Vick requested of Linda the support affidavit required by child-support guidelines promulgated by the supreme court. When Linda's trial counsel admitted that he had not prepared the affidavit, Vick objected to the introduction of any testimony regarding her income or expenses, and the trial court sustained the objection.

Vick's income tax return for 1996 was entered into evidence without objection. Because the return was jointly filed with Vick's current wife and because the income reflected therein was earned through Vick's wholly-owned S corporation, the parties disagreed as to the characterization of the income for the purposes of calculating support.

Vick testified that although prior to 1997, his present wife drew no salary, she worked sixty hours per week in the corporation. Additionally, while he did not dispute that he had a good year in 1996, he testified that his year-end projections for 1997

were considerably less due to several reversals in his business. Vick valued the loss in business at $367,012. He also testified that while the company made $162,028 in 1996, his CPA only projected profits of $3,734 in 1997. Vick also claimed that of the $184,000 in pre-tax profit that his company showed in 1996, he actually kept none of it. He also claimed that he kept the full $100,000 in after-tax income in his business and essentially only realized his $25,000 per year salary, which yielded $384.70 per week in take-home pay. Vick, however, admitted that his corporation had purchased approximately $100,000 worth of registered quarter horses that he personally rode, an airplane that he piloted, and a Porsche and a succession of BMWs for his company cars.

An accountant for the firm that prepared the tax returns for Vick's corporation, Arlene Baltz, testified that although Vick's company made $184,000 in pre-tax profit, that total was calculated on the "accrual" basis and that the after-tax profit was tied up in inventory and accounts receivables. She admitted, however, that Vick had complete control over the amount of these earnings that would be retained by the company. She also testified that Vick claimed $42,000 in depreciation of business assets in 1996, and estimated that $51,000 would be claimed in 1997. Baltz further testified that Vick's corporation paid $178,275 in compensation to officers, which all went to Vick as its only corporate officer. According to Baltz, based on his 1996 tax return, after subtracting taxes and social security payments from his gross income and dividing by 52, Vick had weekly compensation of $4,758.77. She stated, however, that the profit projections were very meager for 1997. Vick's income for child-support purposes in 1997 was pro-jected to be only $21,550.

In his order filed on December 22, 1997, the chancellor raised Vick's support to $1,457.11, beginning with the month of February 1997, when the petition for increase was filed. The order also recited that the payments were to continue through May of 1999, the month that Jody is expected to graduate from high school. The decree incorporated by reference the chancel-lor's findings announced from the bench, which included his method of calculating the amount of support. The chancellor started with Vick's after-tax income in 1996, $247,456.32, which

was derived from the total income listed on Vick's personal income tax return, $406,150, less $158,753.68 that he paid in federal and state income taxes and FICA. Although the chancellor stated that he suspected that Vick might have manipulated the estimated earnings for 1997, he added Vick's projected after-tax income for 1997, $21,550, to the 1996 total, and divided by two. He then took thirteen percent[1] of that total and calculated the monthly portion to arrive at Vick's monthly support obligation. The chancellor also specifically rejected Vick's argument that support should not have been calculated based on the 1996 tax return, because it was a joint return, finding that if Vick's current wife had been an employee, her income would have been reflected on a W-2 or 1099.

Vick first argues that the plain language of section IV of the supreme court's per curiam order, *In re Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. 581 (1997), hereinafter "support guidelines," mandates that the Affidavit of Financial Means shall be used in all cases where a level of support is being set. Further, citing *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988), he contends that the relative income of the parties is a relevant consideration for the trial court, and he asserts that the Affidavit of Financial Means is designed to promote the consideration of all relevant factors. Accordingly, he argues that the chancellor's failure to require the exchange of the affidavit prior to the hearing constitutes reversible error. This argument is without merit.

Section VI of the support guidelines states:

> The Affidavit of Financial Means shall be used in all family support matters. The trial court shall require each party to complete and exchange the Affidavit of Financial Means prior to a hearing to establish or modify a support order.

---

[1] We note that the version of the support guidelines in effect at the time of the hearing mandated that fifteen percent be used in this calculation. *In re Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. 581 (1998). However, Linda did not object to the use of thirteen percent at the hearing, and she has not put this issue before us in a cross appeal.

It is true that the plain language of this section imposes a duty on the chancellor to require that the parties exchange affidavits, but this fact is not dispositive of this issue. As noted above, when Linda's trial counsel admitted that he had not prepared an affidavit, Vick objected to the introduction of any testimony regarding her income or expenses, and the trial court sustained the objection. It is worth noting that Linda's trial counsel offered to quickly prepare an affidavit, but Vick did not pursue the offer. Accordingly, Vick is entitled to no relief on appeal because he was the prevailing party on this issue in the trial court and because he received all the relief he requested. *Berry v. St. Paul Fire & Marine Ins. Co.*, 328 Ark. 553, 944 S.W.2d 838 (1997).

Citing *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993), Vick next argues that it is "axiomatic" that a child-support obligation must be based on the current net income of the obligor. Vick contends that the chancellor ignored "overwhelming" evidence of the cyclical nature of his business and failed to consider the plummet in gross revenues occasioned by the loss of several major accounts. He further asserts that in this court's *de novo* review it should look to the support guidelines in force at the time the order was entered, find that the proper level of support is only $338 per month, and because it only represents a $2 increase over what he was currently paying, dismiss the petition because there has been no material change in circumstances since the filing of the last support order.

In the alternative, Vick argues that if this court finds no error in the chancellor's averaging methodology, we should find that the chancellor erred in considering undistributed income retained by his wholly owned S corporation because it gives a completely distorted view of his annual disposable income. Citing *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998), as authority, he asserts that the chancellor erred in not excluding undistributed retained earnings. Based on this approach, he contends that his annual disposable income for 1996 should have been found to be $146,486.32, and when averaged with his 1997 income of $21,550, his support obligation should be calculated based on

$84,018. He contends that this court should lower his support obligation to fifteen percent of this sum, which is $1050.23. Neither argument has merit.

■ ■ The amount of child support a chancery court awards lies within the court's sound discretion, and we will not disturb the chancellor's child-support award absent an abuse of discretion. *Jones v. Jones, supra.* Regarding the calculation of income of a self-employed payor, section III c. of the support guidelines state:

> For self-employed payors, support shall be calculated based on *last year's federal and state income tax returns and the quarterly estimates for the current year.* Also the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc.

(emphasis added). Furthermore, the support guidelines authorize the court to impute income if the payor is working below full earning capacity. Support guidelines sec. III d.

■ ■ Regarding Vick's argument that the chancellor erred by averaging his 1996 and 1997 incomes, we hold that this methodology does not constitute an abuse of discretion. The plain language of the guidelines requires the court to calculate support based on the previous year's tax returns and the current year's estimates. It is undisputed that the chancellor did exactly that. The support guidelines are, in essence, rules promulgated by the Arkansas Supreme Court, and court rules are construed using the same means, including canons of construction, that are used to interpret statutes. *Anderson v. Anderson, supra.* Because the support guidelines are remedial in nature, they must be broadly construed so as to effectuate the purpose sought to be accomplished by its drafters. *See Files v. Arkansas State Hwy. & Transp Dep't,* 325 Ark. 291, 925 S.W.2d 404 (1996). The intent of the drafters is determined from the ordinary meaning of the language used. *Leathers v. Cotton,* 332 Ark. 49, 961 S.W.2d 32 (1998). Common sense tells us that if the supreme court did not want the previous years' income tax returns to be at least part of the basis for calcu-

lating support obligations for self-employed payors, it would not have made consideration of them mandatory.

Furthermore, Vick's reliance on *Jones v. Jones, supra,* is misplaced. In that case, we rejected the appellant's argument concerning entitlement to an income-tax refund for the year prior to the entry of the support order because the appellant failed to bring up a record that demonstrated trial court error. *Jones* did not involve construction of the support guidelines.

■ We similarly reject Vick's invitation to recalculate his support obligation after excluding his corporation's retained earnings. Our decision in *Anderson v. Anderson, supra,* does not control here. In *Anderson,* we affirmed a chancellor's decision not to deduct from his income the income tax a support obligor paid on the retained earnings of an S corporation in which he held only a twenty-five percent interest. The chancellor had ruled that the obligor's prorated share of the S corporations's retained earnings would not be counted as income for the purpose of calculating the support obligation. The issue in the instant case is clearly different. Moreover, while it is true that in *Anderson v. Anderson, supra,* we affirmed a chancellor's determination of a support obligation that was calculated after he excluded an S corporation's retained earnings, the chancellor in that case nonetheless found that retained earnings constituted income for child-support purposes, but also found that the payor "rebutted the presumption that the amount reflected by the child-support chart after including income from retained earnings is the just amount of child support to order in this particular case." In the instant case, the chancellor also found that the retained earnings were income, but found no reason to deviate from the support guidelines. Furthermore, unlike the minority shareholder obligor in *Anderson,* Vick is the sole owner of his S corporation and, as such, has complete control over the retained corporate earnings.

Finally, Vick argues that merely presenting evidence of the specified change in the obligor's income is insufficient to establish a material change in circumstances warranting an increase in child support. He contends that there was no substantial evidence apart

from financial documents and evidence of an affluent lifestyle to warrant an adjustment of his support obligation. He again points to Linda's failure to submit a support affidavit as a reason for her failure to prove such an entitlement. Furthermore, he asserts that Linda wholly failed to present any proof as to his income at the time the current support order was entered in 1982, and, citing *Ritchie v. Frazier*, 57 Ark. App. 92, 940 S.W.2d 892 (1997), he contends that this failure of proof should have been fatal to Linda's petition. We disagree.

██ ██ Vick's reliance on *Richie v. Frazier, supra,* is misplaced. In *Richie,* the appellee moved to dismiss the appellant's petition to increase child support, alleging a failure to prove what appellee's income was at the time the existing support order was entered. *Id.* In the instant case, Vick made no such motion. Consequently, we hold that he is raising this argument for the first time on appeal and consistent with our well-settled law, we decline to consider it. *Irvin v. Irvin*, 47 Ark. App. 48, 883 S.W.2d 862 (1994). Moreover, Ark. Code Ann. § 9-14-107(c) (Repl. 1998) provides that "[a]n inconsistency between the existent child support award and the amount of child support that results from the application of the family support chart shall constitute a material change of circumstances sufficient to petition the court for review and adjustment of the child support obligated amount according to the family support chart."

Affirmed.

JENNINGS and BIRD, JJ., agree.