Shawn A. Womack, Justice, dissenting. “Our new Constitution is now established, and has an appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes. ” -Benjamin Franklin, 1789 We are all familiar with Benjamin Franklin’s famous quote about death and taxes. This case offers a modern-day insight into both subjects. The part about taxes is obvious in the discussions about income tax returns, definitions of income, accounting methods, retained earnings, and so on. It is the death part of the quote that may not register with readers on the first reading of the majority opinion. However, over time and application of this decision, it 11 ¿will become obvious that two things have died today at the hands of the majority. The first, narrowly speaking, is Administrative Order No. 10 of this court for the purpose of defining income of self-employed individuals. The second death comes in the broader concept of the ability of circuit courts and litigants to rely on the plain, clear, and concise instructional language given to them by orders of this court and applicable statutes. Both die an untimely death by the blunt force administered to them in the majority opinion. There are few areas in the law that provide guidance so clear as the relevant portion of Administrative Order No. 10 where it specifies which line of the tax return to use in determining income for self-employed payors or the relevant statute defining a material change in circumstance on either a percentage basis or a specific dollar amount. The bizarre reasoning of the majority opinion manages to find the trial court’s order clearly erroneous when it in fact followed the specific guidance given to it by this court and the legislature. If this court believes that Administrative Order No. 10 should be altered, this should be done only after thorough review by the Supreme Court’s Committee on Child Support, which allows practitioners, circuit judges, • and lay people to participate in evaluating an amendment of our administrative orders. To rewrite an administrative order because the majority does not particularly like the facts of one case is cavalier and dangerous. As the majority stated, this court reviews child-support orders de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. See, e.g., Ward v. Doss, 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005). In reviewing a circuit court’s findings, we give due deference to that court’s superior position to determine the | ^credibility of the witnesses and the weight to be accorded to their testimony. Id. When the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. Id. In order to modify a child-support amount, the petitioning party must demonstrate a material change in the payor’s circumstances. See, e.g., Hall v. Hall, 2013 Ark. 330, at 4-5, 429 S.W.3d 219, 222. We review a finding that there has been a material change in circumstances for clear error. Id. Because I believe that the circuit court faithfully followed the guidance of Administrative Order No. 10 and the text of the relevant statute in determining that Troutman demonstrated a material change in circumstances, I must dissent from the majority’s conclusion that the circuit court’s actions were clear error under our deferential standards. Troutman has paid child support continuously since the initial decree. His original obligation was $762 per month, but this was increased twice due to the success of his construction business. Troutman is the sole shareholder in Boulder Construction, an S corporation. His first obligation increase was to $3,095 per month; the second was to $6,005 per month. This litigation stems from Troutman’s 2014 petition to modify the decree downward due to an alleged material change in his circumstances. The circuit court followed the guidance of Administrative Order No. 10 for self-employed payors, looking at Troutman’s previous two income tax returns. His 2012 return shows personal income of $717,137, while his 2013 return shows a loss of $171,892. Despite his reported losses in 2013, the corporate returns from Boulder for that year indicate that Troutman took a distribution of $554,745 from the company and that the company had 114$785,392 in deferred income during the year. The court considered expert testimony from accountants representing both parties in the December 2014 hearing. Curry, argued that the distribution from the company, despite not appearing on Troutman’s personal income tax return, should be considered income for the purposes of child-support calculation. Troutman argued that the terms of Administrative Order No. 10 and the past practice in modifying his own support obligation upward are consistent with averaging his personal income tax figures without taking special notice of corporate distributions or deferred income. The circuit court sided with Troutman’s arguments. It gave weight to the expert testimony that any perceived inconsistency between Troutman’s reporting a loss in 2013 while simultaneously taking a substantial distribution was explained by standard accounting practices for small construction companies. Any corporate distributions that Troutman received the benefit from either (1) had been reported on prior tax returns and factored into pri- or child-support payments or (2) would be reported on future tax returns when the associated construction projects were completed and could be factored into future child-support payments. The court set Troutman’s new payment at $2,108 and deducted $1,000 per month until he recouped the overpayment of support under the old figure, which he had been paying since he filed his petition for modification, On appeal, Curry argues that the circuit court clearly erred in finding that Trout-man proved a material change in circumstances sufficient to justify a modification of child support. She contends that the trial court should have included the distribution that Troutman took 115and Boulder Construction’s deferred income in 2013 when calculating income under the “intentionally broad” definition provided in Administrative Order No. 10(11). Administrative Order No. 10, promulgated by this court pursuant to the authority granted in Arkansas Code Annotated section 9-3-312, prescribes the method by which this state’s courts determine child-support payments. The order provides family-support charts for individuals who receive their income on regular weekly, biweekly, semimonthly, or monthly bases. The charts specify a presumptively correct amount that courts should award as child support from payors in each band of income. In recognition of the fact that not all income streams conform to one of these lockstep pay periods, however, the order includes a section for nonsalaried payors. Troutman’s circumstances are governed by the language concerning self-employed payors, which states: For self-employed payors, support shall be calculated based on the last two years’ federal and state income tax returns and the quarterly estimates for the current year. A self-employed pay- or’s income should include contributions made to retirement plans, alimony paid, and self-employed health insurance paid; this figure appears on line 22 of the current federal income tax form. Ark. Sup. Ct. Admin. Order No. 10(III)(c). The order gives the circuit court discretion to deviate from the specified charts and methods if it finds specific reasons why application as written would be contrary to the best interests of the child. See Ark. Sup. Ct. Admin. Order No. 10(1), (V). The order’s specified method is, however, presumptively correct absent such a finding. Here, the circuit court applied the language for self-employed payors as written in the order. It weighed and accepted accountant testimony that the “line 22” change in Troutman’s federal and state tax returns | ^demonstrating net income in 2012 and net loss in 2018 represented the actual state of his finances. Further, it accepted, after hearing extensive testimony and argumentation, that the 2018 distribution necessarily came from funds that either had been taxed or would be taxed in the related project-completion year in accord with a common construction accounting practice. Finally, it accepted Troutman’s argument that the quarterly estimates as contemplated by the order would not be possible or helpful given his use of this project-completion accounting practice and his loss in the prior year. With this definition of Troutman’s income in mind, resolution of the legal issues in this case should be straightforward. The material change in circumstances required to modify a child-support order is a creature of statute. Arkansas Code Annotated section 9-14-107(a)(l) (Repl. 2015) defines as material a “change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month.” The circuit court did not clearly err in finding that Troutman’s tax returns showing a change from an income of $717,137 to a loss of $171,892 represents a change in gross income of more than $100 per month. Indeed, even if the circuit court had accepted Curry’s arguments and had included some or all of the distribution that Troutman took from his company or deferred corporate income in the calculation, the exceedingly modest statutory requirement for demonstrating a material change in circumstances would have been met. The majority asserts that the circuit court overlooked a “failure of proof’ because of purported gaps in Troutman’s presentation of 2011 income data. Even if the majority’s characterization of the 2011 information is correct, it would be irrelevant here. It is uncontested that the circuit court |17had 2012 and 2013 returns before it. Given the huge disparity in income between those two years, the circuit court was certainly entitled to determine that a material change in circumstances had occurred. Finally, the majority adopts Curry’s characterization of Anderson v. Anderson, 60 Ark. App. 221, 963 S.W.2d 604 (1998), and Pannell v. Pannell, 64 Ark. App. 262, 981 S.W.2d 531 (1998), as standing for the proposition that Administrative Order No. 10 “requires the circuit court to consider the retained earnings of a closely held corporation” to prevent “a payor from using the tax code to legally manipulate the amount of income to be considered for child-support purposes.” This is a deeply misleading characterization of those cases. First, as a procedural matter, both cited cases are instances in which an appellate court affirmed chancery court decisions grounded in the results of fact-intensive inquiries into the payor’s financial state. In Panned, for instance, the chancellor opted to include retained corporate income in calculating a child-support obligation when the record indicated that the payor arguing for a lower payment was simultaneously using company funds to purchase luxury cars, $100,000 worth of racehorses, and an airplane for his personal use. See Pannell, 64 Ark. App. at 265, 981 S.W.2d at 532. Including retained corporate income may well make sense in a case where the circuit court fears the sort of bad-faith manipulation contemplated by the majority. Finding such manipulation, however, is best left to the circuit court, and no such finding was made in this case. In fact, not only did the trial court not make a finding of manipulation that would trigger use of its discretion to deviate, but the testimony makes clear that the accounting method used by Troutman was selected at the inception of the business hsand remained unchanged throughout the life of the company. If anything, this gives a strong indication that no manipulation took place. Second, it is impossible to reconcile the majority’s legal summary of the precedents with Anderson. In that case, the court of appeals affirmed a chancery court decision that in fact excluded retained income from an S corporation from the child-support calculation. See Anderson, 60 Ark. App. at 228-29, 963 S.W.2d at 608. Even though the chancery court considered the retained earnings to be income within the definition of Administrative Order No. 10, it wrote that the “plaintiff has rebutted the presumption that the amount reflected by the child support chart after including income from retained earnings is the just amount of child support to order in this particular case.” Id. The chancellor merely declined to permit the payor to deduct from his child-support calculation the income tax he had paid on retained earnings. Since the chancellor excluded the income from the calculation, giving the payor credit for the taxes paid on it would be a windfall. Id. Put simply, there is no ironclad rule that the circuit court must include retained corporate income in child-support calculations. Pannell and Anderson stand only for the discretion of circuit courts to make that inclusion if the circumstances warrant it. The circuit court in this case fulfilled its duty precisely as contemplated by Administrative Order No. 10. I would find no clear error in its decision to follow the prescribed method for self-employed pay-ors of looking at Troutman’s previous two years’ tax returns to calculate income for the purposes of child support. Further, any interpretation of |1flthe circumstances supports the circuit court’s conclusion that Troutman experienced a material change in circumstances for the purposes of the statutory definition. I dissent. Wood, J., joins in this dissent.